[No. 31515-3-I.  Division One.  December 30, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. KENNETH ALAN BOHAN, *Respondent.*

336

*Seth R. Dawson, Prosecuting Attorney,* and *Constance Crawley, Deputy,* for appellant.

*Adam Shapiro* of *Washington Appellate Defender Association,* for respondent.

KENNEDY, J. — Prior to his scheduled trial on charges of selling cocaine, respondent Bohan moved to suppress the evidence which was seized during a search of his apartment. The search was made under authority of a warrant which contained the wrong apartment number. Before executing the warrant, the officer who obtained it realized that he had inadvertently given the magistrate the wrong apartment number. He executed the warrant upon the apartment he had intended to describe to the magistrate.

The trial court granted the motion to suppress and dismissed the charges. The State of Washington appeals. We reverse and remand for reinstatement of the charges.[1]

## FACTS

On January 9, 1992, Detective Vargas of the Snohomish County Sheriff's Department was approached by a confidential informant (CI), who told Vargas that he could buy controlled substances from a person selling them out of an apartment located in the Fireside Apartments complex in Everett.

Later that same day Vargas accompanied the CI to the Fireside Apartments. Vargas sent the CI in to attempt a controlled buy with money from the Department's narcotics buy fund. Vargas watched the CI enter and later exit a particular apartment. The CI returned with a controlled substance. The substance field-tested positive for the presence of cocaine. The CI told Vargas he had purchased the cocaine from "Ken" in apartment D-8.[2]

Vargas returned to the office and wrote an affidavit for a search warrant. Vargas then telephonically applied for the warrant to search apartment D-8 of the Fireside Apartments. The only physical description Vargas included in the warrant was that the apartment was located in a light-colored, 2-story building. The judge granted the warrant to search apartment D-8 at the Fireside Apartments.

Vargas returned later that same day to the Fireside Apartments to execute the warrant. Vargas approached the same

---

[1]In reaching this result, in consideration of the constitutional rights at stake we make an independent evaluation of the evidence, allowing "great significance" to the findings, and deference to the credibility issues. *State v. Hill*, 68 Wn. App. 300, 304, 842 P.2d 996, *review denied*, 121 Wn.2d 1020 (1993); *State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990).

[2]The Fireside Apartments consist of five identical 2-story buildings, all painted the same light color. The only distinguishing characteristic among the buildings, other than their respective locations within the compound, was the large letter affixed to each building, labeling them A to E.

apartment door he had observed the CI enter and exit from during the controlled buy. It was not until then that Vargas realized that the address of the apartment he intended to search was A-8, not D-8 as listed on the warrant. Vargas nevertheless decided to execute the warrant. The search resulted in the seizure of controlled substances and the arrest of the occupant, Kenneth Bohan, for violation of RCW 69.50-.401(d).

Prior to trial, Bohan moved to suppress the evidence seized during the search of his apartment, arguing that the warrant did not satisfy the particularity clause of the Fourth Amendment.[3] The trial court granted the motion and dismissed the charges. The State now appeals the trial court's ruling.

## DISCUSSION

■ The State contends that the trial court erred by applying a hypothetical set of facts to evaluate the possibility that the warrant would authorize the search of the wrong premises.[4] We agree with the State that a warrant containing a wrong address must be evaluated under the actual facts of the case, not in the hypothetical.

The test to determine the sufficiency of a search warrant's description is whether the place to be searched is described with sufficient particularity so as to enable the executing officer to find and identify the location with reasonable effort, and whether there is any reasonable probability that another site might be mistakenly searched.[5] *State v. Rood*, 18 Wn. App. 740, 743-45, 573 P.2d 1325 (1977); *State v.*

---

[3]The Fourth Amendment preserves the right of the people to be secure in their persons, houses, papers and effects and provides that search warrants shall "particularly" describe the place to be searched and the person or things to be seized.

[4]The trial court found the warrant fatally defective because it contained the incorrect apartment number, even though executed upon the correct residence. The court found the defect "could" create a danger that the warrant would be served upon the wrong premises. *State v. Fisher*, 96 Wn.2d 962, 967-68, 639 P.2d 743, *cert. denied*, 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982).

[5]We note that the warrant at issue in this case would not advise the occupant of apartment A-8 of the officer's authority to search that apartment, as opposed to apartment D-8, and would thus fail under the scrutiny of some courts:

*Fisher*, 96 Wn.2d 962, 967-68, 639 P.2d 743, *cert. denied*, 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982); *Steele v. United States*, 267 U.S. 498, 503, 69 L. Ed. 757, 760, 45 S. Ct. 414, 416 (1925).

█ Cases applying this standard to warrants containing a wrong address decline to give primary emphasis to the technical accuracy of the address. *State v. Rood*, 18 Wn. App. at 744. The key is that there must be assurances that a mistaken search would not be likely to occur. *State v. Fisher*, 96 Wn.2d at 967.

The trial court held that the search was unlawful because Vargas would have searched the wrong apartment if he had gone to D-8, as listed on the search warrant. Certainly it is true that if Vargas had gone to D-8 as stated in the warrant, a mistaken search would have occurred. In fact, if any other officer but Vargas had executed the warrant a mistaken search could scarcely have been avoided. Only Vargas knew which apartment the CI had entered at the time of the controlled buy.

But the test as applied does not ask whether it is hypothetically or theoretically possible, under other circumstances than those present, that the wrong premises could be searched. Rather, the test is one of practical application: given the *actual* facts of a given case, can the officer who actually executes the warrant by reasonable effort find and determine the correct premises to be searched, without having to resort to guesswork? If so, the warrant is not constitutionally defective.[6]

---

The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to *advise those being searched of his authority.*

(Italics ours.) *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir.), *cert. denied*, 476 U.S. 1174, 90 L. Ed. 2d 987, 106 S. Ct. 2901 (1986). Bohan has not challenged the warrant on this basis.

[6]We note our approach is consistent with *United States v. Weinstein*, 762 F.2d 1522, 1533 (11th Cir. 1985), *cert. denied*, 475 U.S. 1110, 89 L. Ed. 2d 917, 106 S. Ct. 1519 (1986):

We hold that *under the circumstances presented here [the executing officer had been to the premises before and had no doubt about the location of the*

Information concerning the location of the premises based on the officer's personal knowledge of the location or its occupants may be considered when a correct address is missing. *Fisher*, 96 Wn.2d at 967. Where it was established that the officers already knew where the defendant lived, an error in the address listed on the warrant was immaterial. *State v. Andrich*, 135 Wash. 609, 612, 238 P. 638 (1925).[7]

In this case, the record shows that the designation of the apartment as D-8 was the result of a misstatement by the CI, not the result of an erroneous observation by Vargas. When Vargas returned to the Fireside Apartments to execute the warrant, he went directly to the same apartment he had seen the CI enter. There is no evidence that Vargas was ever confused as to which apartment was the one where the controlled buy occurred. There has been no challenge to the officer's credibility. Further, as soon as Vargas reached the apartment he realized the mistake on the warrant.[8] We hold that under the facts of this case, Vargas' knowledge was sufficient to cure the defect in the warrant's description of the premises to be searched.

---

*true premises]* the warrants' erroneous designation of the wrong corner of the building did not invalidate the warrants or the searches conducted pursuant to them.

(Italics ours.) *Weinstein*, at 1533 (citing *Steele*, 267 U.S. at 503; *United States v. Prout*, 526 F.2d 380, 386-88 (5th Cir.), *cert. denied*, 429 U.S. 840, 50 L. Ed. 2d 109, 97 S. Ct. 114 (1976); *United States v. Darensbourg*, 520 F.2d 985, 986-88 (5th Cir. 1975); *United States v. Melancon*, 462 F.2d 82, 94 (5th Cir.), *cert. denied*, 409 U.S. 1038, 34 L. Ed. 2d 487, 93 S. Ct. 516 (1972)).

[7] *But see United States v. Williamson*, 1 F.3d 1134 (10th Cir. 1993) (noting that an executing officer's knowledge may be a curing factor, but invalidating a warrant where the investigating officer's knowledge was the *sole* source of information identifying the physical location of the premises).

[8] We note that Vargas, after discovering the error, made no effort to call the magistrate and correct the error. This would have been the preferred course of conduct, since an authorization by the magistrate to correct the warrant would only have taken a few minutes and would have provided Bohan with assurance, had he requested to see the warrant, of the officer's actual authority to search his residence. However, on these specific facts, we do not find Vargas' conduct to be a fatal error.

■ The burden of proving the reasonable probability of a mistaken search lies with the moving party. *Fisher*, 96 Wn.2d at 967 (citing *State v. Trasvina*, 16 Wn. App. 519, 523, 557 P.2d 368 (1976), *review denied*, 88 Wn.2d 1017 (1977)). We have found no reported Washington case wherein a defendant has successfully attacked a search warrant containing an incorrect address, so the threshold burden is still undecided in Washington. In this case, while Bohan was able to establish the theoretical possibility and even a high theoretical probability that the wrong premises would be searched *if Vargas were not the executing officer*, it is not enough, because Vargas *was* the executing officer and he knew full well in which apartment the controlled buy had occurred only a few hours earlier.

The reasonable efforts/reasonable probability standard places a heavy burden on defendants. Certainly Bohan has made a stronger showing than any other defendant in the Washington cases of which we are aware. Nevertheless, a defendant's Fourth Amendment right entitles him or her to an independent determination by a magistrate that probable cause to search his or her residence has been shown, and to protection against broad-ranging exploratory searches. *State v. Wright*, 61 Wn. App. 819, 824-25, 810 P.2d 935, *review denied*, 117 Wn.2d 1012 (1991). The warrants clause of the Fourth Amendment prohibits the issuance of warrants which do not "particularly [describe] the place to be searched and the persons or things to be seized." *Maryland v. Garrison*, 480 U.S. 79, 84, 94 L. Ed. 2d 72, 107 S. Ct. 1013 (1987); *State v. Wright*, 61 Wn. App. at 824 n.8. The erroneous address cases are appropriately analyzed pursuant to the particularity clause because history teaches the constitutional impossibility of leaving the protection of our basic freedoms to the whim of the officers charged with executing warrants. *See, e.g.*, *Stanford v. Texas*, 379 U.S. 476, 485-86, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965).

Here, the evidence giving rise to probable cause to search Bohan's apartment was submitted for independent evalu-

ation by a magistrate and that there was probable cause to issue the warrant has not been challenged. The mistake in the address was somewhat akin to a typographical error. It did not require Officer Vargas to guess as to the identity and location of the apartment he had the authority to search. There was no reasonable probability that Officer Vargas would perform a mistaken search not supported by probable cause. Thus the protection guaranteed by the Fourth Amendment was not compromised by the error in the address. For these reasons, we reverse and remand for reinstatement of the charges.

SCHOLFIELD and GROSSE, JJ., concur.

Review denied at 124 Wn.2d 1002 (1994).