[No. 29917-4-I. Division One. February 7, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DUNCAN ERIC HOKE, *Appellant.*

*Michael J. Lambo,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Mahoney, Deputy,* for respondent.

PEKELIS, A.C.J. — Duncan Hoke appeals a conviction of manufacturing marijuana and defrauding a public utility in the first degree, assigning error to the trial court's denial of his motion to suppress evidence seized in a search of his home. Hoke contends that the search warrant was based upon illegally obtained evidence of probable cause. We reverse.

I

In February 1991, Hoke resided in Bellevue, Washington. His house, which faced north, could only be reached via an access road from the main road. When approaching the front door from the access road, a large unfenced lawn occupied the east and northeast portions of the lot. The front door was the only door visible. To the west of the front door, the driveway ended at a 2-car garage. From this vantage point, the west and the south sides of the house were not visible. In addition, no defined pathway led from the front to the back, on either the west or east side.

Along the west side, thick foliage bordered the lot approximately 12 to 15 feet from the house. Stacked wood, a broken down truck, a wheelbarrow, and miscellaneous tools partially obstructed access along the west side.

Acting upon a confidential informant's tip, King County Police Department Detective Broggi asked Detective Orendorff to investigate a possible marijuana grow at the Hoke residence. On February 15, 1991, at 10 a.m., Detective Orendorff arrived at Hoke's house to obtain a smell of growing marijuana. Detective Orendorff knocked twice on the front door, but no one answered. He noticed that the porch light was on and the newspaper was on the porch. Detective Orendorff testified that he had wanted the occupants to open a door because an opened door causes the air currents to change inside, which, in turn, causes the smell of marijuana to exit through the door.

Detective Orendorff then walked from the front porch around the west side of the house in search of another door. En route, Detective Orendorff smelled what he determined to be "growing marijuana" from a roof vent located on the west side. Detective Orendorff then left the premises immediately.

Detective Orendorff's observations were included in the affidavit in support of a search warrant. The affidavit recited in relevant part:

> On 2-15-91 Detective Mark Orendorff went to the residence of . . . While walking near the garage at the residence Det. Orendorff smelled what he knows to be growing marijuana from the residence. . . .

On February 19, 1991, the police executed a search warrant for Hoke's residence and discovered a small marijuana grow operation and illegal electric power diversion used in the grow operation. The police then seized, among other items, one growing marijuana plant, five to six harvested plants, and items typically used in growing marijuana.

In June 1991, Hoke was charged with one count of manufacturing marijuana under RCW 69.50.401(a)(1)(ii), the Uniform Controlled Substances Act, and with one count of defrauding a public utility in the first degree under RCW 9A.61-.020(5) and RCW 9A.61.030(1)(b).

Hoke moved to suppress seized evidence, contending that probable cause for the issuance of the search warrant was based upon an unlawful search.[1] Hoke argued that the warrantless search, upon which probable cause was based, constituted an unreasonable invasion of the curtilage of his home.

The trial court made the following finding of fact:

> Although some items were placed on the West side of the defendant's house, they did not create a clear signal that foot traffic was not allowed to the rear of the home. That no indica-

---

[1]Hoke also argued that the affidavit in support of the search warrant, based on the confidential informant's tip, was insufficient to establish probable cause under *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984). The State, however, conceded this issue below and admitted that without Detective Orendorff's observations the affidavit was insufficient to establish probable cause.

tions were present to put a person on notice that private activities were taking place on the West side or rear of the defendant's house.

The trial court denied the motion and made the following conclusions of law:

2. That walking to the rear of the garage area along the west side by Detective Orendorff was not an unreasonable intrusion across the curtilage of the defendant's property.

3. That Detective Orendorf [*sic*] acted reasonably.

4. That Detective Orendorff walked to the rear of the defendant's home on legitimate business, along an access route impliedly open to the public. There Orendorff made sensory observations while remaining in an area in which there is no reasonable expectation of privacy in keeping with *State v. Seagull*[, 95 Wn.2d 898, 632 P.2d 44 (1981)] and *State v. petty* [*sic*][, 48 Wn. App. 615, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987)].

5. Therefore, the affidavit in support of the search warrant . . . contains sufficient facts to establish probable cause to issue the Search Warrant.

(Citations omitted.) Following a stipulated trial, Hoke was convicted as charged.

## II

Hoke appeals the trial court's denial of his motion to suppress evidence, contending that the search, upon which probable cause for the search warrant was based, violated the fourth amendment to the United States Constitution.[2]

█ Although the trial court's findings relating to a motion to suppress are of great significance, on review, we must independently evaluate the evidence given the constitutional rights at issue. *Tukwila v. Nalder*, 53 Wn. App. 746, 749, 770 P.2d 670 (1989).

It is well established that "[w]arrantless searches of constitutionally protected areas are unreasonable per se." *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990). The curtilage is an area " 'so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.' " *Ridgway*, at 918 (quoting

---

[2]Hoke also cites article 1, section 7 of the Washington Constitution, but makes no separate argument on this basis.

*United States v. Dunn*, 480 U.S. 294, 301, 94 L. Ed. 2d 326, 107 S. Ct. 1134 (1987)). It is undisputed that Hoke's west-side yard was within the curtilage of Hoke's home.

 Entry into an area of curtilage by a government official will not necessarily result in a violation of a resident's reasonable expectation of privacy. If an officer on legitimate business enters an area of the curtilage *impliedly open* to the public, such as a driveway, walkway, or access route leading to the residence or to the porch of the residence, no privacy interest is invaded.[3] *State v. Ferro*, 64 Wn. App. 181, 182, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992); *see also State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981); *State v. Petty*, 48 Wn. App. 615, 618, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987). The *Seagull* court aptly described the limits placed on an official entering an area of the curtilage, stating: "An officer is permitted the same license to intrude as a reasonably respectful citizen." *Seagull*, 95 Wn.2d at 902.

If an officer is within an impliedly open area or a nonintrusive vantage point and detects something by use of the senses, such as sight or smell, it is in "open view". *State v. Myers*, 117 Wn.2d 332, 345, 815 P.2d 761 (1991); *Seagull*, 95 Wn.2d at 906. Such an observation can provide the basis for a search warrant. *State v. Ferro*, 64 Wn. App. 181, 182, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992).

However, "a substantial and unreasonable departure" from an area of curtilage impliedly open to the public will be deemed to exceed the scope of the implied invitation and to intrude on a constitutionally protected expectation of privacy. *Seagull*, 95 Wn.2d at 903. The scope of the implied invitation is dependent on the facts and circumstances of each case. *Seagull*, at 903.

---

[3]Hoke does not dispute that Detective Orendorff was on "legitimate business" or acting with "legitimate purpose" when he went to Hoke's residence with the express purpose of trying to obtain a smell of growing marijuana. *See State v. Petty*, 48 Wn. App. 615, 619, 740 P.2d 879 (holding that an officer acts with "legitimate purpose" when approaching a residence in connection with an investigation focused on the occupant), *review denied*, 109 Wn.2d 1012 (1987).

Hoke does not contend that Detective Orendorff violated his reasonable expectation of privacy when he walked up to the front porch from the access road. Rather, the issue before us is whether Detective Orendorff "substantially and unreasonably departed" from an area of the curtilage impliedly open to the public when he left the front porch and walked around to the west-side yard. If so, his observations and all evidence seized pursuant to the warrant must be suppressed.

■ The evidence presented shows that: (1) access along the west side of Hoke's house was partially obstructed by stacked wood, a broken down vehicle, a wheelbarrow, and miscellaneous tools, indicating that the area was not an access route; (2) the west-side yard was covered with grass, further indicating that it was not an access route; (3) no defined pathway encircled the house in either direction, implying the absence of any access route from front to back; (4) thick foliage, which bordered the west-side yard, prevented access onto the property from the west, signaling a subjective expectation of privacy in that area; and (5) the detective was forced to deviate from the direct access route which ended at the front porch in order to reach the west-side yard.

The facts of *Lorenzana v. Superior Court*, 9 Cal. 3d 626, 638, 511 P.2d 33, 42, 108 Cal. Rptr. 585 (1973), *cited in Seagull*, 95 Wn.2d at 904-05, are most similar to the facts of this case. In *Lorenzana*, the California Supreme Court held that an officer entered an area of curtilage not impliedly open to the public and, thus, violated the defendant's reasonable expectation of privacy when, in order to look through a window, the officer entered a 6-foot-wide strip of property along the east side of the defendant's house. *Lorenzana*, at 638. In so holding, the court focused on the following facts: the area was covered with dirt and grass; no defined pathway existed on the east side; the front door, located on the west side, was the normal access route to the house; the area did not serve as a normal access route to the rear door located on the south side or to another house located behind

the lot; and bushes located at the rear of the east side partially blocked access onto the property. *Lorenzana*, at 634-36. The court summed up the privacy interest at issue:

> [T]he generic *Katz* [*v. United States*, 389 U.S. 347 (1967)] rule permits the resident of a house to rely justifiably upon the privacy of the surrounding areas as a protection from the peering of the officer unless such residence is "exposed" to that intrusion by the existence of public pathways or other invitations to the public to enter upon the property.

*Lorenzana*, at 638. The facts which led the *Lorenzana* court to conclude that Lorenzana's side yard was not impliedly open to the public are similar to those presented here. In both cases, an officer entered a side yard that was not an access route to any entry of the residence, no defined pathway cut across the area, and bushes located along the side yard partially blocked access onto the property.

The Washington cases the State cites are clearly distinguishable. In *Seagull*, 95 Wn.2d at 905, the court held that the officer did not substantially and unreasonably depart from an area of curtilage impliedly open to the public when he walked through the side yard to the north door after he did not receive answer at the south door. En route, the officer deviated from the most direct route along the side of the house and walked past a greenhouse where he observed what he believed to be growing marijuana. *Seagull*, at 900. In stark contrast to this case, the side yard there was *an admitted access route* between the south and north doors. *Seagull*, at 905. Thus, although the officer did not take the most direct route between the two doors, he made his observations from an area of the curtilage impliedly open to the public.

In *State v. Vonhof*, 51 Wn. App. 33, 34, 751 P.2d 1221 (1988), *cert. denied*, 488 U.S. 1008 (1989), a tax appraiser entered Vonhof's property through a locked gate with a key obtained by a neighbor, passed through an open gate, and walked past several "No Trespassing" signs. *Vonhof*, at 34. Upon reaching the house, he knocked and shouted, but no one answered. *Vonhof*, at 34. The appraiser then inspected the exterior of an unappraised shop building located 180 to 200 feet from the residence from which he smelled growing

marijuana through an air vent. *Vonhof*, at 34. The court held that the appraiser's actions did not amount to a search under the federal or state constitutions because his route was normal in light of his statutory authorization to investigate new buildings at any reasonable time. *Vonhof*, at 40. Our case differs significantly — Detective Orendorff's authority to enter a private property is only coextensive with that of a "reasonably respectful citizen".

■ We find that Hoke's west-side yard was not an area of the curtilage impliedly open to the public. Therefore, we conclude the detective exceeded the scope of his implied invitation by departing from the front porch and walking around to the west-side yard and, thus, intruded upon Hoke's constitutionally protected expectation of privacy.[4] As a result, we reject the notion, implicit in the trial court's ruling, that the homeowner must take overt steps signalling that an area of the curtilage is private. To impose such a burden would be inconsistent with existing law and would seriously weaken the constitutional protection against unreasonable searches.

■ Because the showing of probable cause was dependent on observations gained during an unlawful search, all of the evidence seized pursuant to the warrant was tainted; thus, it is inadmissible. *Ridgway*, 57 Wn. App. at 920; *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Reversed.

GROSSE and KENNEDY, JJ., concur.

---

[4]We note that our conclusion is consistent with other Washington cases interpreting the scope of the open view doctrine. *See, e.g., State v. Ridgway*, 57 Wn. App. at 918-19 (holding that officers entered an area of the curtilage not impliedly open to the public when they approached the house situated in an isolated setting and hidden from public view, proceeded around a closed gate blocking the entrance to a long driveway, walked down the driveway where they encountered barking dogs blocking the entrance to the nearest door, and circled around to the farthest door where they observed growing marijuana); *see also State v. Daugherty*, 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981); *State v. Ferro, supra.*