[No. 17395-6-II.   Division Two.   March 28, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVE C. GAVE, *Appellant*.

---

*Jeffrey Steinborn* and *Steinborn & Associates,* for appellant.

*Bernardean Broadous, Prosecuting Attorney,* and *Jon Tunheim, Deputy,* for respondent.

BRIDGEWATER, J. — Steve C. Gave appeals his convictions of unlawful manufacture of marijuana and unlawful possession of marijuana with intent to deliver. We affirm.

At approximately 10:45 a.m. on May 13, 1992, two detectives from the Washington State Patrol traveled to Gave's residence, located at 4731 Allison Springs Lane Southwest in Olympia, Washington. The detectives were investigating a tip from the Drug Enforcement Agency (DEA) that there was a marijuana grow operation at the residence. One other residence is located on Allison Springs Lane. The City of Olympia owns both properties, and a property management company leases the properties for the City. At the end of Allison Springs Lane is a watershed also owned by the City.

The detectives received permission from the City to travel down Allison Springs Lane. No gates or obstructions blocked the detectives' way as they turned from Delphi Road, the main road, and drove down Allison Springs Lane. As they drove toward Gave's residence, the detectives saw five signs posted at different places along Allison Springs Lane.

The first sign, posted near a watershed building, read "No Trespassing — City of Olympia Watershed". On a utility pole located near the driveway branching off to the other residence, a second sign reading "No Trespassing" was posted. A third sign on another utility pole further down Allison Springs Lane read "No Trespassing — City of Olympia Watershed". A fourth sign reading "No Trespassing" was posted on a utility pole somewhere near Gave's residence. A fifth "No Trespassing" sign was posted on a tree or a building and was apparently located farther down the road on the way to the City's watershed. One of the detectives testified that he thought the signs pertained to the City's watershed. Gave admits that he did not put up the signs and that he does not know who did.

Gave's residence was visible from the road. The detectives, who were wearing plain clothes and driving an unmarked vehicle, parked their vehicle in Gave's driveway, walked directly to Gave's front door, and knocked. No gates or fences blocked their route to Gave's house, and no signs of any kind were physically located on Gave's house. When Gave answered the door, the detectives told Gave they were there to repossess a vehicle belonging to a fictitious person and Gave politely answered their questions, never asking them to leave his property. While speaking with Gave, the detectives noticed the strong smell of marijuana. The detectives proceeded directly to their vehicle and left when the conversation was concluded.

Based upon the detectives' information, Detective Pearsall of the Thurston County Sheriff's office sought and obtained a search warrant. Later, officers served the search warrant at Gave's residence. Inside, the officers uncovered an elaborate marijuana grow operation in the basement. At trial, Gave stipulated that he lived in the house and grew the marijuana but said it was being grown and packaged for personal use to alleviate symptoms of malignant hypertension.

Gave was charged with one count of unlawful manufacture of marijuana and a second count of unlawful possession of marijuana with intent to deliver. Before trial, Gave moved to suppress all evidence discovered during the execution of the warrant pursuant to CrR 3.6; the trial court denied the motion. At trial, Gave waived his right to a jury and agreed to be tried on stipulated facts; he was found guilty on both counts. The trial court sentenced each count as a separate crime. Gave appeals.

## I

Gave argues that the trial court erred in denying his motion to suppress the evidence seized as a result of what he alleges was an unlawful search by the detectives at his front door under both the Fourth Amendment to the United States Constitution and the more stringent protections afforded by article 1, section 7 of the Washington State Con-

stitution. He contends that the presence of the "No Trespassing" signs meant that the police could not enter his property without a warrant, regardless of the source of the signs. Gave argues that without this tainted evidence, the warrant contained insufficient evidence to establish probable cause to support its issuance.

■ Recently, this court in *State v. Johnson*, 75 Wn. App. 692, 702-03, 879 P.2d 984 (1994) applied the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) to a case involving similar facts and held that Const. art. 1, § 7 places a greater degree of protection on a person's right to exclude the government from his or her private property than does the Fourth Amendment. Thus, neither the *Gunwall* analysis nor a Fourth Amendment analysis need be addressed.

■ Under the "open view doctrine" of both Const. art. 1, § 7 and the Fourth Amendment, police with legitimate business may enter areas of the curtilage of a residence that are impliedly open, and "[i]n so doing they are free to keep their eyes open." *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981); *Johnson*, at 704. Areas of curtilage impliedly open to the public include a driveway, walkway, or access route leading to the residence or to the porch of the residence. *State v. Hoke*, 72 Wn. App. 869, 874, 866 P.2d 670 (1994). If police are able to detect something by utilizing one of their senses while lawfully present on areas of impliedly open curtilage, that detection does not constitute a "search" under either Const. art. 1, § 7 or the Fourth Amendment. *Seagull*, at 901; *State v. Vonhof*, 51 Wn. App. 33, 37-39, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989). In short, as our Supreme Court recently stated,

> If a law enforcement officer or agent does not go beyond the area of the residence that is impliedly open to the public, such as the driveway, the walkway, or an access route leading to the residence, no privacy interest is invaded. Whether the intrusion into an area has substantially and unreasonably exceeded the scope of an implied invitation depends on the facts and circumstances of the particular case.

(Footnotes omitted.) *State v. Maxfield*, 125 Wn.2d 378, 398,

886 P.2d 123 (1994). Since the officers had a right to be in the place where they were when they developed probable cause, namely an impliedly open area, the trial court was justified in not suppressing the evidence.

██ This conclusion is not altered by the no trespassing signs. We held in *Johnson* that "No Trespassing" signs were not dispositive on the issue of privacy. We held that it was merely one factor to be considered in conjunction with other manifestations of privacy. The "No Trespassing" signs were not those of Gave. He in no way adopted them as his own, and permission was granted by the owner, the City of Olympia, to traverse Allison Springs Lane. The signs were not intended to have any effect upon the property of Gave, and therefore he has no right to rely upon them. He did not erect gates or fences, did not post other signs on his residence, and did not interpose objection to the police presence at his doorstep. Gave's residence differed in no respect from any other residence and the case is analyzed using settled law.

This case is more like *State v. Hornback*, 73 Wn. App. 738, 871 P.2d 1075 (1994) than *Johnson*. The detectives, albeit using a ruse, did not use the secretive methods utilized by the agents in *Johnson* to investigate the tip, as they parked in Gave's driveway, directly approached the house without departing from the accessway, and personally contacted Gave. Thus, the detectives never left the areas of curtilage impliedly open to the public. *See Hornback; Hoke*, 72 Wn. App. at 874. The detectives were on legitimate police business. The fact that officers are investigating a crime they believe is occurring on the property does not invalidate the evidence seen as long as the defendant does not have a reasonable expectation of privacy in the access route used. *State v. Petty*, 48 Wn. App. 615, 619, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987). Moreover, unlike *Johnson*, the detectives here conducted their investigation at midmorning rather than in the middle of the night.

Thus, even if Gave had adopted the signs as embodying his subjective intent to close his property, the signs would not have been dispositive as to the privacy issue. The signs

alone in this case are insufficient because no other manifestation of privacy was present. The detectives were therefore properly present in an impliedly open access area, and their observations were valid under the open view doctrine.

In sum, the detectives' actions were not a search within the meaning of Const. art. 1, § 7, and the trial court's refusal to suppress evidence was proper.

## II

■ Gave also argues that the counts of manufacture of marijuana and possession of marijuana with intent to deliver constitute the same criminal conduct for sentencing purposes under RCW 9.94A.400(1)(a), and the case should be remanded for resentencing. The issue has been decided by the Supreme Court in *Maxfield* adversely to Gave. *Maxfield*, 125 Wn.2d at 403. Since both offenses require different "intents", the trial court did not err when it refused to treat the two crimes as the "same criminal conduct" for sentencing purposes.

We affirm.

HOUGHTON, A.C.J., and MORGAN, J., concur.