[Nos. 19883-9-III; 19884-7-III; Division Three. January 29, 2002.]
19885-5-III.

THE STATE OF WASHINGTON, *Appellant*, v. DAVID DANIEL
DODSON, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. KYANN MARIE
CARDWELL, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. MONTY NEAL
HARNDEN, *Respondent*.

*John G. Wetle, Prosecuting Attorney,* and *Allen C. Nielson, Deputy,* for appellant.

*Melissa A. May; Robert A. Simeone;* and *David M. Miller* (of *Miller & Prothero*), for respondents.

SCHULTHEIS, J. — While serving a telephonic warrant to search Monty Harnden's property for evidence of methamphetamine manufacture, Detective Dan Anderson noticed that the warrant described a search for marijuana, not methamphetamine. The detective wrote in methampheta-

mine, served the warrant, and gathered substantial evidence of a "meth lab" on Mr. Harnden's property. The State charged Mr. Harnden and two other people with a number of crimes, including conspiracy to manufacture methamphetamine. At the suppression hearing, the trial court found that the search warrant was invalid and suppressed the evidence. The State voluntarily dismissed the charges and now appeals, contending the trial court misapplied the search and seizure court rule, CrR 2.3(c). Mr. Harnden cross-appeals the trial court's failure to suppress the evidence on alternate grounds.

Because we find that the telephonic search warrant was supported by probable cause and complied with CrR 2.3(c), we reverse the trial court's order to suppress the evidence. Additionally, we find no merit in Mr. Harnden's cross-appeal.

FACTS

The following facts, taken from the CrR 3.6 suppression order findings and conclusions, are not disputed. On the evening of September 8, 2000, Detective Anderson and two other officers drove to Mr. Harnden's rural address near Kettle Falls. The officers were looking for a man named Charles Evans, a suspect in the recent theft of a pickup truck and a three-wheeler off-road vehicle. Earlier that day, a park ranger had reported that she had seen a man matching Mr. Evans's description near the Harnden property. She and an officer had found the stolen pickup nearby and had discovered three-wheeler tracks running from park service property to the Harnden land. On the basis of that information, the police decided to investigate the Harnden property.

The three officers approached Mr. Harnden's house. One knocked on the door while the other two stationed themselves so they could see if anyone ran. Eventually Mr. Harnden came to the door. When asked if Mr. Evans lived there, Mr. Harnden replied, " 'No, I ran him off.' " Clerk's

Papers (CP) at 29. About this time, one of the officers spotted a three-wheeler on the property. Mr. Harnden explained that Mr. Evans had brought it there a few days earlier. The officers asked if they could look around the property to see if Mr. Evans had returned. In response, Mr. Harnden said to wait while he got his jacket and he would accompany them.

Several vehicles and recreational trailers were parked on all sides of the residence. The officers first looked in a nearby travel trailer, and finding no one, moved to another travel trailer, which Mr. Harnden called a guesthouse. As soon as the officers opened the door of this trailer, they were confronted with a strong chemical odor and equipment they recognized as associated with the manufacture of methamphetamine. Detective Anderson advised Mr. Harnden of his *Miranda*[1] rights. Mr. Harnden then stated that he knew nothing about the meth lab, and that a man named Vince Kitchen had recently occupied the trailer.

Detective Anderson directed the other officers to secure the premises while he went to apply for a search warrant. By the time he reached the police station and called a superior court judge, it was 5:06 A.M. on September 9. The call was recorded and later transcribed. Detective Anderson described the night's events to the judge and read from a standard form listing the types of evidence he expected to find on the premises, including methamphetamine, documents related to the manufacture and distribution of the drug, and documents indicating who occupied the premises. The judge stated that he found probable cause to search the house, garage, and all vehicles on the premises for evidence of a methamphetamine operation and for stolen property. He directed Detective Anderson to scribe the judge's name on the warrant, to leave a copy of the warrant at the premises, and to return the warrant when possible. Detective Anderson took a search warrant form from a desk

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

drawer, wrote in the address of the premises and the property to be searched, and signed the judge's name.

When he returned to the scene and began reading the warrant to Mr. Harnden, Detective Anderson realized that the typewritten warrant form referred to a search for marijuana and did not mention methamphetamine:

> Seize the following property: All evidence and fruits of the crime of manufacturing, delivering or possessing controlled substances, and all other things by means of which the crime of manufacturing, delivering, or possessing a controlled substance, to wit: marijuana, has or reasonably appears about to be committed, including drug paraphernalia as described in RCW 69.50.102, and/or any weaponry used in protection of said illegal activity, as well as papers, books, or documents identifying the occupants of the premises.

Pl.'s Ex. 2, at 1. Detective Anderson later testified that he corrected the executed warrant to indicate methamphetamine, but that he failed to correct the copy of the warrant in the court file, which contains the original "to wit: marijuana" language. Pl.'s Ex. 2.

After serving the amended warrant, the officers searched the premises, discovering evidence of a meth lab, methamphetamine, weapons, marijuana, drug paraphernalia, and stolen property. Mr. Harnden and two other occupants of the residence, David Dodson and Kyann Cardwell, were arrested and charged with various crimes related to possession, manufacture, and distribution of methamphetamine and possession of stolen property. All three defendants moved to suppress the evidence in a consolidated hearing, arguing that the officers (1) had no probable cause for the initial entry onto Mr. Harnden's property, (2) failed to follow proper "knock and talk" procedure, (3) entered the guesthouse trailer without consent or a warrant, and (4) exceeded the scope of the telephonic warrant because the warrant was not adequately specific and did not cover the property where the meth lab was found.

The trial court rejected all arguments except for the challenge to the validity of the warrant. In that regard, the trial court found that the telephonic warrant was not sufficiently specific regarding the time for service or the form of the warrant, and was never actually approved as to its final form. Because the issuing judge did not dictate the terms of the warrant or review it as written by Detective Anderson, the trial court found that it was, in effect, a generalized warrant, and invalid on that basis. Additionally, the trial court noted that the issuing judge had no basis to authorize a search for marijuana. For all these reasons, the trial court concluded the search was warrantless and its fruits must be suppressed. All charges against the defendants were dismissed and this appeal (and cross-appeal) followed.

VALIDITY OF THE TELEPHONIC WARRANT

In suppressing the evidence obtained pursuant to the telephonic search warrant, the trial court found that the warrant's fatal flaws included: (1) specific restriction to the seizure of marijuana and evidence of its production, without probable cause to search for marijuana; (2) the issuing judge's failure to approve the warrant form, allowing Detective Anderson to speculate as to the place searched, objects seized, time to execute, and to whom the warrant was to be returned; and (3) variation between the modified search warrant actually served and the copy filed with the court. The State contends the warrant complied with CrR 2.3(c) and sufficiently informed the property owner what items were to be seized.

The Fourth Amendment requires warrants to describe with particularity the things to be seized. *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). The particularity requirement prevents general searches and the seizure of objects that are mistakenly believed to fall within the issuing magistrate's authorization. *State v. Chambers*, 88 Wn. App. 640, 643, 945 P.2d 1172 (1997). Our review of

a warrant's particularity is de novo. *State v. Perrone*, 119 Wn.2d 538, 549, 834 P.2d 611 (1992). The constitutional requirements are met if the warrant describes the things to be seized with reasonable particularity under the circumstances. *Chambers*, 88 Wn. App. at 643 (citing *Perrone*, 119 Wn.2d at 546-47). Above all, the warrant must be evaluated in a commonsense, practical manner, rather than in a hypertechnical sense. *Id.* (citing *Perrone*, 119 Wn.2d at 549).

■ ■ Sometimes the nature of the underlying offense precludes a descriptive itemization of the objects to be seized. In those cases, generic classifications such as lists are acceptable, and the search must be circumscribed by reference to the crime under investigation. *Riley*, 121 Wn.2d at 28. In this case, the warrant executed by Detective Anderson was designated as a search for controlled substances. The officers were authorized to seize "[a]ll evidence and fruits of the crime of manufacturing, delivering or possessing controlled substances," a generic description of evidence circumscribed by the reference to the crime being investigated. Pl.'s Ex. 2, at 1. The sentence continues, however, with authorization to seize "all other things by means of which the crime of manufacturing, delivering, or possessing a controlled substance, to wit: marijuana [changed to methamphetamine in the executed copy]." Pl.'s Ex. 2, at 1. The trial court found that the original warrant's specific restriction to seizure of marijuana was not supported by probable cause and that the issuing judge did not authorize the amendment to the warrant adding methamphetamine. These findings, while supported by the evidence, *do not support the conclusion that the amended warrant was invalid.*

■ ■ Clearly a search warrant must be based on probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (citing *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995)). Probable cause is established by a detached magistrate's evaluation of evidence presented in an affidavit by the officer seeking the warrant. CrR 2.3(c); *State v.*

*Smith,* 93 Wn.2d 329, 352, 610 P.2d 869 (1980). In the case of telephonic warrants, the affidavit is presented to the magistrate orally, is recorded, and is transcribed for the record if a party requests it. CrR 2.3(c). The transcribed affidavit in the current case unequivocally supports probable cause to search for evidence of methamphetamine production, delivery, or possession. The issuing judge carefully established the geographical limits of the search (six acres of property and all buildings and vehicles found there), the crime investigated (involving methamphetamine), and what the officers expected to find related to that crime. On the basis of that information, the judge authorized his signature on a search warrant to seize evidence of methamphetamine production, delivery, and possession. That the original warrant form mistakenly indicated the search was for marijuana rather than methamphetamine does not implicate a lack of probable cause, but a clerical error. Whether that error was harmful depends on its effect.

 Besides limiting the executing officer's discretion to search and seize, the purpose of a warrant is also to inform the person subject to the search what items the officer may seize. *Riley,* 121 Wn.2d at 29. Detective Anderson's warrant informed Mr. Harnden that the officers would seize evidence of the crime of manufacturing, delivering, or possessing controlled substances. Additionally, when the detective noticed that the warrant described a particular controlled substance—marijuana—he informed Mr. Harnden that the warrant was supposed to say methamphetamine instead. Detective Anderson was authorized by the issuing judge, based on probable cause, to search for methamphetamine. Accordingly, the detective's amendment to the search warrant, while tardy, was valid under these circumstances.

Although we agree with the trial court that the better practice is for the officer to read the search warrant into the record so that the issuing magistrate knows exactly what he or she has authorized, CrR 2.3(c) does not require this

procedure. Federal Rule of Criminal Procedure 41 requires that both the affidavit and the search warrant be made of record. Our Supreme Court's failure to adopt the same rule in CrR 2.3(c) indicates that the crucial test of a search warrant is its basis in probable cause, not its hyper-technical adherence to a particular form. *See State v. Kuberka*, 35 Wn. App. 909, 911-12, 671 P.2d 260 (1983) (when a statute or court rule specifically designates the things on which it operates, the inference is that all things omitted were omitted intentionally). If the warrant describes with particularity the things to be seized, providing adequate notice to the person subject to the search, corrections of clerical mistakes in the warrant should not invalidate it, as long as the corrections comply with the issuing court's original authorization. *See Chambers*, 88 Wn. App. at 648 (requiring use of word "marijuana" instead of phrase "controlled substance" would elevate form over substantive enhanced privacy protection). Such was the case here. Accordingly, the amended search warrant was valid and the trial court erred in suppressing the evidence.

■■ The trial court's additional conclusion that the warrant was invalid because it failed to specify the time for its execution and return does not withstand scrutiny. The rules for execution and return of a warrant are generally ministerial in nature and will not invalidate a warrant absent a showing of prejudice to the defendant. *State v. Kern*, 81 Wn. App. 308, 311, 914 P.2d 114 (1996). None of the defendants has shown or argued that the warrant's failure to specify the time of its execution and return prejudiced him or her in any way. Consequently, suppression of the evidence on this basis was not warranted. *Id.* at 312.

SUPPRESSION ON ALTERNATE GROUNDS

■■ Anticipating that this court might reverse the trial court's invalidation of the search warrant, Mr. Harnden cross-appeals the trial court's refusal to suppress the evidence on other grounds. He contends the original

warrantless intrusion on his property was illegal, the police did not advise him he could refuse consent to a search, and the search exceeded the geographical scope of the search warrant. The relevant findings of fact are not challenged and are verities for the purposes of this cross-appeal. *State v. Hill*, 123 Wn.2d 641, 644-47, 870 P.2d 313 (1994). Our review is limited to a de novo determination of whether the unchallenged findings support the trial court's conclusions of law. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

I. Initial police intrusion on the property. Mr. Harnden contends the initial police entry onto his property violated his state and federal constitutional rights because the police had no probable cause to believe Mr. Evans had committed a crime or was on the property, and because the officers ignored the "no trespassing" signs.

If police detect something while lawfully present on areas of impliedly open curtilage, that detection does not constitute a search under Constitution article I, section 7, or the Fourth Amendment. *State v. Gave*, 77 Wn. App. 333, 337, 890 P.2d 1088 (1995). Open curtilage is that area apparently open to the public, such as the driveway, the walkway, or any access route leading to the residence. *State v. Maxfield*, 125 Wn.2d 378, 398, 886 P.2d 123 (1994). "No trespassing" signs are not dispositive on the issue of privacy and are only factors to be considered along with other manifestations of privacy. *Gave*, 77 Wn. App. at 338. Further, an officer does not need probable cause to enter open curtilage on legitimate business. *See id.* at 337.

The trial court found that a man missing several fingers and wearing rings on all his intact fingers was discovered near a pickup truck reported stolen. Mr. Evans, who was a suspect in the theft of the truck and three-wheeler, matched this physical description. He also had an outstanding felony warrant. Three-wheeler tracks were found running from the stolen truck to Mr. Harnden's property. On the basis of this information, police officers had a legitimate reason to drive up the road to Mr. Harnden's residence to attempt to

find Mr. Evans. The trial court further found that the officers did not see a "no trespassing" sign and that there were no gates or chains across the road, which served several residents. The court additionally found that Mr. Harnden repaired vehicles on his premises and that vehicles used the route to his property for business purposes. Because the police did not ignore any manifestations of privacy and had legitimate business on the Harnden property, their entry on the property was not intrusive under state and federal constitutional guidelines. *Gave*, 77 Wn. App. at 338.

II. Knock and talk procedure. Mr. Harnden next contends the police conducted a "knock and talk" when they questioned him at his residence. Citing *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998), he argues that his consent to search was not voluntary because he was not informed that he had the right to refuse.

 A knock and talk is a police procedure whereby police seek permission to enter a residence with the intent to obtain consent to search for evidence or contraband. *Id.* at 115. To mitigate the coercive effect of a knock and talk, the officers must warn the residents of their right to refuse consent. *Id.* at 116. In this case, however, the officers were not conducting a knock and talk. Their investigation was not inherently coercive because they were not seeking evidence to incriminate Mr. Harnden, but only looking for information on the whereabouts of Mr. Evans and the three-wheeler he was suspected of stealing. In fact, the officers did not even seek consent to search Mr. Harnden's residence at that point; they merely asked if they could check out the other buildings and trailers on the property to see if Mr. Evans had returned. Accordingly, Mr. Harnden's consent to search the vehicles on his property was voluntary.

III. Physical scope of the search. Mr. Harnden's final argument is that the scope of the search warrant was circumscribed by the address of his residence. He contends the trailer meth lab was found on a separate parcel, owned

by him, but not located on the parcel described by the search warrant.

The sufficiency of a search warrant's description of the place to be searched is determined by examining whether the place is described with sufficient particularity to enable the executing officer to find and identify the location without mistake. *State v. Bohan*, 72 Wn. App. 335, 338, 864 P.2d 26 (1993). The technical accuracy of the address is not the primary concern. *Id.* at 339. Instead, the key is whether a mistaken search would be likely to occur. *Id.* In this case the search warrant gave the address of Mr. Harnden's residence on one of three adjacent parcels he owned. Detective Anderson had no difficulty determining the correct premises to be searched. Mr. Harnden accompanied him on the initial, warrantless investigation of the trailers on the property, and did not indicate that the investigation extended beyond his property. Indeed, it did not. The transcribed search warrant affidavit accurately describes the meth lab trailer as sitting about 40 yards northeast of the Harnden residence. Considering the record and Detective Anderson's role in obtaining the search warrant, the place to be searched was sufficiently described. There was no likelihood that any other property would have been mistakenly searched.

Reversed.

BROWN, A.C.J., and SWEENEY, J., concur.

Review denied at 147 Wn.2d 1004 (2002).