FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 49

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43784-8-II |
| Respondent, | |
| v. | |
| MARK E. D'ENTREMONT, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Mark E. D'Entremont appeals his convictions of manufacturing and possessing marijuana, arguing that the trial court erred in finding probable cause for the search warrant that revealed his marijuana grow operation. Because the officers' observations corroborated the anonymous tip about the marijuana grow and were made during a lawful entry onto D'Entremont's property, we affirm the finding of probable cause and the resulting convictions.

## FACTS

On November 23, 2010, the Lewis County Sheriff's Office received an anonymous Crime Stopper's tip regarding a suspected marijuana grow at 122 McAtee Road in Centralia. The tipster reported that several people were growing marijuana in the middle outbuilding and added that the "very large" grow was not for medical purposes. Ex. 2.

Deputy Kevin Engelbertson drove out to 122 McAtee Road that day and saw that the property contained a residence with an attached carport and separate but adjacent outbuildings. The residence and outbuildings clearly were visible from the road. Engelbertson noticed that the two-bay middle outbuilding was the only building on the property that did not have snow on its roof. After reviewing the property's power records, he discovered that the power usage had been consistently elevated throughout 2010 with no significant fluctuations.

On November 24, Deputy Engelbertson and Detective Bruce Kimsey drove to the property during the daytime to do some surveillance and attempt to contact the property owner. While driving by the property, they saw an unoccupied truck, with its engine running, parked in the driveway in front of the middle outbuilding. Another car was in the carport. The officers parked down the street and watched to see whether there was any traffic coming to and from the property and any other evidence that might suggest a marijuana grow.

After about 20 or 30 minutes, the truck left the property, but the officers could not see the driver and did not know who had left. They decided to make contact with the property to see if anyone was present to answer questions about the suspected marijuana grow. The purpose of this contact was not only to develop evidence of a criminal investigation but also to establish what was actually occurring on the property. The officers considered the possibility that there could be a legal marijuana grow on the property.

The entry to the property at 122 McAtee Road did not have any gate or fence or any nontrespassing or other restrictive signage, and it was not closed off to the public in any way. When the officers approached the property, they were able to walk right into a driveway/parking area that was directly in front of the residence and the middle outbuilding. There was a cement

walkway in front of the middle outbuilding, which also had a door built for people to walk through.

The officers wanted to see whether anyone was in the middle outbuilding, so they walked directly to the small door at its front and knocked. Deputy Engelbertson could hear fans or equipment running inside the building, but no one came to the door.

While standing outside the middle outbuilding, Detective Kimsey told Deputy Engelbertson that he smelled marijuana. Engelbertson then saw a hole in the wall of the middle outbuilding. He got down on the ground to peer through it and observed evidence of a marijuana grow. The officers then went to the front door of the main residence and knocked several times, but they received no response.

Based on the anonymous tip, the steady elevated electric bill, the lack of snow on the roof, the odor of marijuana, and the observation of evidence of a marijuana grow, the officers applied for and were granted a search warrant for the middle outbuilding. After a forced entry into the building, they found marijuana growing in two separate rooms. The evidence established that the grow operation had been going on for a long time, and the amount of marijuana present exceeded the amount allowed under the medical marijuana law. The packaged and dried marijuana in the building weighed hundreds of grams.

During the search, D'Entremont returned to the property in the truck the officers had seen earlier. He admitted growing marijuana with the help of another person and stated he had recently received a medical marijuana authorization. D'Entremont acknowledged that even with the authorization, which he had obtained 11 days earlier, he could not have grown or possessed the amount of marijuana in the building.

3

After the State charged D'Entremont with manufacturing marijuana, D'Entremont filed a motion to suppress, arguing that the officers conducted an unlawful search before obtaining the warrant and that all of the resulting evidence should be suppressed. The trial court agreed that Deputy Engelbertson conducted an unlawful search when he looked through the hole in the outbuilding's wall but otherwise upheld the officers' actions.[1] The court concluded that the officers' remaining observations corroborated the anonymous tip and provided probable cause for issuance of the search warrant. The State then amended the information to add a charge of possession of marijuana over 40 grams. The trial court found D'Entremont guilty after a bench trial on stipulated facts and imposed concurrent 30-day sentences.

## DISCUSSION

PROBABLE CAUSE

Appellate courts generally review the issuance of a search warrant for abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Great deference is given to the probable cause determination of the issuing judge or magistrate. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). At the suppression hearing, however, the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion that we review de novo. *Neth*, 165 Wn.2d at 182.

---

[1] The State does not challenge the court's assessment of Deputy Engelbertson's conduct in looking through the hole, so we do not consider it or the officer's resulting observations in analyzing the issues presented.

4

A search warrant should issue only if the application shows probable cause that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched. *Neth*, 165 Wn.2d at 182. Probable cause to issue a warrant is established if the supporting affidavit sets forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity. *State v. Cord*, 103 Wn.2d 361, 365-66, 693 P.2d 81 (1985). Probable cause requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched. *Neth*, 165 Wn.2d at 183. The affidavit should be evaluated in a commonsense manner rather than hypertechnically, with doubts resolved in the warrant's favor. *Neth*, 165 Wn.2d at 182; *Young*, 123 Wn.2d at 195.

Washington courts apply the *Aguilar-Spinelli*[2] test to determine probable cause to support a search warrant based on an informant's tip. *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984). This two-prong test requires the State to show the informant's basis of knowledge and veracity. *Jackson*, 102 Wn.2d at 435. If the State cannot make that showing, probable cause can still be established if independent police work sufficiently corroborates the informant. *Jackson*, 102 Wn.2d at 438. The independent investigation should point to suspicious activity along the lines of the criminal behavior proposed by the informant. *State v. Huft*, 106 Wn.2d 206, 210, 720 P.2d 838 (1986). The investigation is insufficient if it corroborates only innocuous facts. *Huft*, 106 Wn.2d at 210.

Here, the State could not establish either the tipster's basis of knowledge or veracity. The trial court concluded, however, that the officers' investigation corroborated the anonymous tip

---

[2] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Gates*, 462 U.S. 213, *but adhered to by State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

and that probable cause existed before the officers entered the property based on the tip, the power usage records, and the snow melt on the middle outbuilding's roof.

D'Entremont challenges that conclusion and the State concedes error, but we question both the challenge and the concession. We recognize that Washington courts have held that records of abnormally high electrical consumption alone are not sufficient to corroborate a tip regarding a marijuana grow. *Young*, 123 Wn.2d at 196; *State v. McPherson*, 40 Wn. App. 298, 301, 698 P.2d 563 (1985). But the combination of the tip about a commercial marijuana grow in a specific building among several on the property, the records of continually high electrical usage, and the snow melt on the roof of the building in question, arguably satisfies the probable cause requirement. *See State v. Rakosky*, 79 Wn. App. 229, 239, 901 P.2d 364 (1995) (high electrical usage in new outbuilding and absence of snow on its metal roof did not provide probable cause where tip did not allege criminal activity).

We need not rest the probable cause determination on this evidence alone, however, if the magistrate properly considered the odor of marijuana that Detective Kimsey detected while standing outside the middle outbuilding. *See State v. Johnson*, 79 Wn. App. 776, 778-83, 904 P.2d 1188 (1995) (probable cause for search warrant existed where anonymous tip reported marijuana grow, roof of residence had no snow, electrical records showed large fluctuations, and agents smelled marijuana from street in front of residence), *review denied*, 128 Wn.2d 1023 (1996). D'Entremont argues here, as he did below, that the officers gathered this evidence during the course of an unlawful warrantless entry and search and that it cannot be considered in evaluating probable cause.

No. 43784-8-II

ENTRY INTO CURTILAGE

The trial court upheld the officers' entry into the curtilage of D'Entremont's property in denying his motion to suppress. We review this aspect of the court's ruling to determine whether substantial evidence supports the findings of fact and whether those findings support the trial court's conclusions. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Where, as here, the findings are unchallenged, they are verities on appeal. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

The constitutional protection against warrantless searches applies most strongly to a person's home. *State v. Ross*, 141 Wn.2d 304, 312, 4 P.3d 130 (2000). The curtilage of a home is so intimately tied to the home itself that it is placed under the home's "umbrella" of constitutional protection. *Ross*, 141 Wn.2d at 312. The closer an officer comes to entering the home, the greater the protection. *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990).

Police with legitimate business may enter areas of the curtilage of a residence that are impliedly open, and in doing so they "'are free to keep their eyes open.'" *State v. Gave*, 77 Wn. App. 333, 337, 890 P.2d 1088 (1995) (quoting *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981)). Legitimate police business includes investigating possible criminal activity. *Ross*, 141 Wn.2d at 314. Areas of curtilage impliedly open to the public include a driveway, walkway, or access route leading to the residence. *Gave*, 77 Wn. App. at 337 (citing *State v. Hoke*, 72 Wn. App. 869, 874, 866 P.2d 670 (1994)). When a law enforcement officer is able to detect something by use of one or more of his senses while lawfully present in an impliedly open curtilage area, that detection does not constitute a "search" subject to constitutional protections. *Seagull*, 95 Wn.2d at 901. As the court in *Seagull* further explained,

7

> An officer is permitted the same license to intrude as a reasonably respectful citizen. However, a substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy.

95 Wn.2d at 902-03 (citations omitted).

Whether a portion of the curtilage is impliedly open to the public depends on the totality of the circumstances surrounding the officers' entry. *State v. Ague-Masters*, 138 Wn. App. 86, 98, 156 P.3d 265 (2007). The use of fences, gates, and restrictive signage may affect the degree to which areas of curtilage and access routes are impliedly open. *See State v. Johnson*, 75 Wn. App. 692, 705-06, 879 P.2d 984 (1994) (fenced and gated property, with "no trespassing" and "private property" signs, showed that access way was not open), *review denied*, 126 Wn.2d 1004 (1995); *Ridgway*, 57 Wn. App. at 918 (blocking long driveway with closed gate demonstrated subjective expectation of privacy in area beyond gate). And a late-night entry is more likely to implicate privacy concerns than a mid-morning investigation. *Gave*, 77 Wn. App. at 338; *see also Ross*, 141 Wn.2d at 314 (entry unlawful where deputies entered property at hour when no reasonable respectful citizen would be welcome absent an actual invitation or emergency).

Here, the trial court found that the property at 122 McAtee Road had no gate or fence, no restrictive signage, and was not closed off to the public in any way. All of the property was easily visible from the road and there was a large driveway/parking area in front of the residence and the middle outbuilding.

The trial court also found that the officers walked up to the outbuilding and knocked, but received no answer despite hearing noise inside. As Deputy Engelbertson explained, they had seen a truck parked outside that building and assumed someone was inside. While standing outside the building, Detective Kimsey smelled the odor of marijuana coming from the building.

8

The officers unsuccessfully attempted to contact someone at the main residence and then left to obtain a warrant.[3]

The court's findings show that the officers were attempting to contact the property's occupants to ask about the possible marijuana grow when they smelled marijuana. They approached the property openly and during the day with the intent to speak to its occupants. They did not enter the property under cover of darkness to look for a marijuana grow operation without attempting to approach the house or contact its occupants, as did the officers who conducted an unlawful search in *Johnson*, 75 Wn. App. at 705. Nor did they leave the front door after receiving no answer and put their noses against the crack in the nearby garage doors to see if they could smell marijuana, thereby deviating substantially from the conduct of a reasonably respectful citizen. *State v. Boethin*, 126 Wn. App. 695, 700, 109 P.3d 461 (2005).

D'Entremont argues that our analysis should be guided by the Ninth Circuit's reasoning in *United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012). There, the court held that an officer's uninvited entry into a carport was not justified under the "knock and talk" exception to the warrant requirement. *Perea-Rey*, 680 F.3d at 1187-88. Under this exception, law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants. *Perea-Rey*, 680 F.3d at 1187. Where the officer entered the carport without invitation, saw the defendant, identified himself and told the defendant not to move, the

---

[3] During the suppression hearing, the officers testified that they went first to the middle outbuilding, then to the residence, and then back to the outbuilding in an attempt to contact any occupants. Neither the affidavit nor the findings of fact describe the officers as making two attempts to contact the occupants of the outbuilding, but this discrepancy is not material. The officers did not unlawfully intrude whether they knocked on the outbuilding door once or returned for a second attempt at contact because they had heard noise inside.

9

officer did not engage in a lawful "knock and talk" but instead trespassed on the curtilage and unlawfully detained the defendant. *Perea-Rey*, 680 F.3d at 1188-89.

The *Perea-Rey* case is easily distinguishable on its facts. Here, the officers stayed on the open access routes to the house and outbuilding. They did not enter an enclosed carport surrounded by a fence with a closed driveway gate, as did the officer in *Perea-Rey*. 680 F.3d at 1184. Detective Kimsey smelled marijuana while he and Deputy Engelbertson were attempting to contact the property's occupants from a lawful vantage point. The officers did not engage in an unlawful search.

We hold that the specifics of the anonymous Crime Stopper's tip, combined with the officers' information and observations regarding the high and steady electric usage, lack of snow on the middle outbuilding roof, and the smell of marijuana emanating from that outbuilding, were sufficient to provide probable cause for the issuance of a search warrant. The trial court did not err in denying D'Entremont's motion to suppress.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
QUINN-BRINTNALL, P.J.

We concur:

_____
PENOYAR, J.

_____
MAXA, J.

10