[No. 12488-2-II. Division Two. May 18, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DEAN RIDGWAY, *Appellant.*

*Craddock D. Verser* of *Clallam–Jefferson County Public Defender Association,* for appellant.

*John F. Raymond, Prosecuting Attorney,* and *Steven L. Olsen, Deputy,* for respondent.

WORSWICK, J.—Dean Ridgway appeals a conviction of possession of marijuana with intent to manufacture or deliver (RCW 69.50.401(a)), assigning error to the trial court's failure to suppress evidence seized in a search of his home. Ridgway contends that the warrant was based on illegally obtained evidence of probable cause. We reverse.

Robert Barrie, a Jefferson County deputy tax assessor, went on Ridgway's property in the course of his official duties.[1] He saw plants that he believed were marijuana, and he later returned and shot a photo and gave it to Sheriff's Deputies Piccini and Sukert. The deputies thereupon went to the house to investigate.

Ridgway's house is not visible from the road, and neighboring houses cannot be seen from the property. The dwelling is at the end of a curving driveway approximately 200 yards long, blocked at the entrance by a gate. The deputies walked around the closed gate and up the drive to the house where they encountered two dogs positioned at the door nearest the driveway. They circled to the far door to avoid the dogs. There, the deputies observed potted marijuana plants growing next to the steps. They knocked on the door, received no response, and left.

Sukert then applied for search warrant. The affidavit for probable cause described the photo and recited that "the plants [depicted] did appear to have the same shape and color as marijuana." The affidavit also described the visit and the deputies' observation of "several marijuana plants" seen growing near the steps of the house. Execution of the warrant resulted in the seizure of a large number of marijuana plants from both outside and inside the residence.

---

[1]RCW 84.40.025 authorizes inspection "at any reasonable time" of real or personal property "[f]or the purposes of assessment and valuation of all taxable property in each county".

Ridgway attacks the deputy assessor's activity on multiple grounds, and he also contends that the deputies' entry was an illegal warrantless search. We need not discuss Ridgway's contentions about the assessor, for we conclude that his photo and information did not supply probable cause for the warrant. We agree with Ridgway's contention that the officers' investigative entry was unlawful.

Warrantless searches of constitutionally protected areas are unreasonable per se. *State v. Chrisman,* 100 Wn.2d 814, 820, 676 P.2d 419 (1984). Ridgway is correct in his contention that the deputies' visit to his house was an unlawful intrusion, for it was an uninvited invasion of the curtilage of his home, an area protected from unreasonable searches and seizures.

The curtilage is that area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn,* 480 U.S. 294, 301, 94 L. Ed. 2d 326, 107 S. Ct. 1134 (1987). The scope of the curtilage is determined with reference to facts as to "proximity, use and expectation of privacy." *State v. Niedergang,* 43 Wn. App. 656, 660, 719 P.2d 576 (1986). The closer an officer comes to entering the home, the greater the protection. *Chrisman,* 100 Wn.2d at 820. Plainly, the area in which the officers observed the marijuana was within the curtilage.

Police with legitimate business may enter areas of the curtilage that are impliedly open, such as access routes to a house. *State v. Seagull,* 95 Wn.2d 898, 902, 632 P.2d 44 (1981). However, the undisputed physical facts of this case do not allow the inference that Ridgway opened his property to uninvited visitors. The house is located in an isolated setting, hidden from the road and from neighbors. The long driveway is blocked by a closed gate, demonstrating a subjective expectation of privacy in the area beyond the gate. *State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958, 67 L. Ed. 2d 382, 101 S. Ct. 1417 (1981). Moreover, barking guard dogs stationed at the nearest door warned uninvited visitors that

they were not welcome. Indeed, the deputies were required to deviate from the direct route to the house to avoid the dogs. The deputies unlawfully entered the curtilage of Ridgway's home.

██ Although the deputies did not seize evidence during this improper search, they offered their observations as facts in support of the search warrant. However, the inclusion of illegally obtained information in an affidavit does not invalidate the warrant if other competent evidence is presented that establishes probable cause to issue the warrant. *State v. Coates,* 107 Wn.2d 882, 888, 735 P.2d 64 (1987). The remaining question, therefore, is whether the deputies had probable cause for a warrant without the entry. We conclude that they did not.

██ Ridgway challenges the trial court's conclusion that "the deputies had probable cause to obtain a search warrant to search the property upon viewing the Polaroid photograph taken by Mr. Barry [*sic*]." This conclusion rests upon the following unchallenged finding of fact:

> Both deputies [Piccini and Sukert] are trained in identification of marijuana; both have participated in numerous seizures of growing marijuana plants. They examined the photograph; and Deputy Sukert believed the plants photographed were marijuana. However, they wished to see for themselves whether the plants were indeed marijuana.

Since Ridgway fails to assign error to this finding, our review is limited to determining whether it supports the trial court's conclusion. *State v. Niedergang, supra.* It does not.

 Probable cause to issue a warrant is established by the presentation of facts that would lead a reasonable person to conclude that there is a *probability* that the defendant is involved in criminal activity. *State v. Cord,* 103 Wn.2d 361, 367, 693 P.2d 81 (1985). For the facts to support the conclusion that the photo provided the deputies with probable cause, the trial court was required to find that the officers identified the plants from the photo. *Cord,* 103 Wn.2d at 366. The finding states that Deputy Sukert *believed* that the plants in the photo were marijuana, but

also that the deputies wished to see for themselves whether the plants *were indeed* marijuana. These determinations are inconsistent, and the finding is ambiguous. Inasmuch as the court's informal opinion does not dispel the ambiguity, we look to the uncontroverted evidence within the record. *Cf. State v. Moon*, 48 Wn. App. 647, 652–53, 739 P.2d 1157 (court's oral opinion showed evidence relied on), *review denied*, 107 Wn.2d 1029 (1987); *State v. Knowles*, 46 Wn. App. 426, 430, 730 P.2d 738 (1986) (same). The undisputed testimony of the deputies shows that they could not and did not identify the marijuana from the photograph.

■ Sukert considered himself qualified to identify growing marijuana plants, but he testified that he was not an expert at identifying the plant from pictures of leaves. Although the photo showed the plant's color and leaf shape, it did not, he said, capture the distinctive shape of a marijuana plant, a characteristic Sukert ordinarily relied upon to identify marijuana. Sukert also admitted that "[t]he actual direct sight of the plant is a lot better than looking at the photograph." According to Deputy Piccini, they visited the Ridgway property to see if the plants were "marijuana or . . . daisies or whatever." The record shows that the deputies visited the residence to identify positively what they only suspected might be marijuana. This illegal search, and not Barrie's photograph, provided the probable cause for the warrant. Since the showing of probable cause was dependent on information gained during an unlawful search, all of the evidence seized pursuant to the warrant was tainted and, therefore, inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Reversed.

ALEXANDER, C.J., and PETRICH, J., concur.