[No. 29737-6-I. Division One. April 18, 1994.]

THE STATE OF WASHINGTON, *Respondent* v. JON BRENT HORNBACK, *Appellant*.

739

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

AGID, J. — Jon Hornback appeals his conviction for possession of marijuana with intent to manufacture or deliver,

contrary to RCW 69.50.401(a), on the grounds that the trial court erred in denying his motion to suppress evidence and in failing to enter findings on every element of the crime.[1] We affirm.

## I

### FACTS

In 1989, the Everett Police Department received information from an informant that Hornback was operating a grow operation in his home. To corroborate this information, two detectives drove up his driveway during daylight hours on November 9, 1989. Their purpose was to contact the defendant, observe the house, and to check for the smell of marijuana.

When the officers arrived at Hornback's property, they did not encounter any closed gates or other obstructions blocking the driveway. The officers drove up to the parking area and stopped; they went no closer to Hornback's house. They did not deviate from the driveway while on the property. Hornback came out of the house and approached the officers' car. He and one of the officers spoke for 2 or 3 minutes about the whereabouts of an address for which the officer pretended they were looking. After the conversation, the officers left. Hornback never asked the officers to leave the property.

The officers noted that Hornback appeared to be under the influence of a controlled substance and that he smelled heavily of marijuana smoke. They noted that his eyes were glassy and he had difficulty maintaining a consistent train of thought. The officers also observed that the basement windows of his house were boarded over. This information was included in the affidavit in support of the search warrant application.

The following information was also included in the affidavit: Special Agent Norm Prinz of the Federal Bureau of Alcohol, Tobacco and Firearms informed Detective Lang

---

[1]This issue was resolved by the trial court's entry of amended findings of fact and conclusions of law on August 12, 1993. The amended document includes the finding of intent that was omitted in the original document.

that a federal confidential informant had information regarding a specific person dealing a specific drug for a specific price from a specific location. Lang recognized that the federal informant was a past informant for the Everett Police Department who had worked with Lang and other officers and provided information leading to the seizure of drugs and arrest of several drug offenders. A controlled buy verified this information.

The person selling the drugs was Hornback's daughter, Jodi. The informant related that Jodi got marijuana from her father who had a grow operation in Snohomish, Washington. The informant did not know Jodi's father's name, but Jodi had gotten a truck from him. Agent Prinz traced the license number of Jodi's truck through the Department of Licensing to Jodi Pullar. A title search on the truck showed that Hornback was the previous owner. Lang spoke to the informant who said that he had not seen Hornback's grow operation; his information about it came from Hornback's daughter, Jodi. The informant stated that, at an earlier time, Hornback had smuggled cocaine from Colombia to the United States. The Drug Enforcement Administration confirmed that Hornback was suspected of smuggling cocaine into the United States in 1980.

Lang obtained Hornback's electric usage records from the public utility district and included the following information in the affidavit: his consumption level was 11,000 to 14,000 kilowatt hours at a cost of $400 to $650 each billing period, a high usage, with little seasonal variation. Lang contacted a utility employee who specializes in investigating power thefts. He agreed that Hornback's usage was very high. Lang explained that the indoor cultivation of marijuana uses great amounts of electricity for grow lights and that the lack of seasonal variation in usage is consistent with a continuous growing operation.

Everett police searched Hornback's home pursuant to a warrant on January 5, 1990, and uncovered evidence of a marijuana grow operation and a small amount of cocaine. He was charged with unlawful possession of marijuana with

intent to deliver or manufacture and with possession of cocaine. Hornback moved pretrial to suppress this evidence, arguing that the search warrant was based in part on information gathered during an illegal search. The trial court denied the motion.

At trial, the defense admitted that Hornback had a marijuana growing operation in his basement. Hornback's attorney suggested that the jury be instructed to return a guilty verdict on the charge of possession of marijuana with intent to manufacture. Hornback agreed with this suggestion. The following stipulation, signed by Hornback and his attorney, was read to the jury:

> The defendant, John [*sic*] B. Hornback, stipulates and agrees that on January 5, 1990, he possessed marijuana with the intent to manufacture or deliver it in Snohomish County, Washington. Specifically, he admits to growing marijuana in his residence at 17818 West Flowing Lake Road, and the plants in fact were marijuana plants. You take that as evidence.

He asserted a defense of unwitting possession as to count 2, possession of cocaine.

Midway through the trial, Hornback waived his right to a jury, and the case proceeded as a bench trial. The court found him guilty of count 1, possession of marijuana with intent to manufacture or deliver. The court also found that he had unwittingly possessed the cocaine and acquitted him of count 2, possession of cocaine. This appeal followed.

## II

### MOTION TO SUPPRESS EVIDENCE

Hornback moved to suppress evidence obtained from the search of his home on the ground that the warrant was issued without probable cause. He contended that the warrant was invalid because it relied primarily on the earlier entry onto his property which, he maintained, was unlawful because it infringed on his reasonable expectation of privacy in the curtilage of his home. He appeals the trial court's denial of his motion to suppress on these grounds.

■■ We reject Hornback's argument. The curtilage of a home enjoys heightened Fourth Amendment protection. *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990). However, a person does not have a reasonable expectation of privacy in areas of the curtilage impliedly open to the public. 57 Wn. App. at 918. Thus, an entry by law enforcement officials onto those areas of the curtilage, such as driveways, walkways or access routes leading to a residence, does not constitute a search and does not implicate the Fourth Amendment. *State v. Hoke*, 72 Wn. App. 869, 873, 866 P.2d 670 (1994).

■■ Whether a portion of the curtilage is impliedly open to the public is determined by the facts of each case. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). The court below found that the officers were lawfully on Hornback's property. It held that law enforcement officials do not violate a reasonable expectation of privacy by going onto a citizen's property even where they employ a ruse, and that such activity is permitted as long as the officers behave as a reasonably respectful private citizen would. *See State v. Petty*, 48 Wn. App. 615, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987); *Seagull.* The trial court also distinguished this case from *Ridgway*[2] on the following bases: in this case the officers did not encounter closed gates, Hornback's driveway was about one-half the length of the one in *Ridgway*, Hornback's house was at least partially visible from the road, his neighborhood was semiresidential, with neighboring residences visible from his property, the officers did not deviate from the direct route to Hornback's residence and the officers maintained a considerable distance

---

[2]In Ridgway, the court held a search warrant invalid because information in the warrant had been gathered by an intrusion into a portion of the defendant's curtilage not impliedly open to the public. The court held that the "undisputed physical facts of [the] case [did] not allow the inference that Ridgway opened his property to uninvited visitors." 57 Wn. App. at 918. Ridgway's house was "located in an isolated setting, hidden from the road and from neighbors". 57 Wn. App. at 918. His "long driveway [was] blocked by a closed gate" and "barking guard dogs . . . warned uninvited visitors that they were not welcome." To avoid the dogs, "the deputies were required to deviate from the direct route to the house". 57 Wn. App. at 918-19.

from the residence at all times. The court found that Hornback probably had a "No Trespassing" sign posted at the entrance of his driveway when the officers were on his property.[3] It held, however, that the fact that the officers may have driven past such a sign was not dispositive of the constitutional issue.[4]

■ The trial court's conclusion that the officers were lawfully on Hornback's property because they did not enter or depart from an area of the curtilage not open to the public is supported by sufficient evidence, and the court did not err in denying his motion to suppress evidence. The officers' observations were made from a lawful vantage point. Thus, under the open view doctrine, their activities did not constitute a search and the Fourth Amendment warrant requirement does not apply. *State v. Ferro*, 64 Wn. App. 181, 182, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992). Under the open view doctrine, an officer's observation of evidence from a lawful vantage point is not a search, and those observations can be used as the basis for securing a search warrant. 64 Wn. App. at 182. The information obtained by the officers when they visited Hornback's property on November 9, 1989, was lawfully obtained and properly included in the search warrant.

---

[3]The evidence on this point was unclear because Officer Lang testified that she had not seen a "No Trespassing" sign, and a photo taken the day the warrant was served on January 5, 1990, showed no sign. When the police took another photo on May 8, 1991, there was a "No Trespassing" sign. Hornback testified that he had a "No Trespassing" sign up all the time except for a period of several months from January 5, 1990, until sometime that summer. Several of his friends testified that they entered his property over a period of years, passing a "No Trespassing" sign.

[4]The trial court relied on *State v. Vonhof*, 51 Wn. App. 33, 751 P.2d 1221 (1988), *cert. denied*, 488 U.S. 1008 (1989), for the proposition that the presence of a "No Trespassing" sign was not dispositive of the issue. The *Vonhof* court, citing *Oliver v. United States*, 466 U.S. 170, 179, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984), stated that "the presence of . . . 'No Trespassing' signs does not increase the constitutional level of privacy interests". 51 Wn. App. at 40. We agree with the trial court that the presence of a "No Trespassing" sign is not dispositive of this issue. A "No Trespassing" sign alone does not withdraw permission to enter access routes to a house or other portions of the curtilage impliedly open to the public.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

WEBSTER, C.J., and SCHOLFIELD, J., concur.