[No. 50417-7-I. Division One. July 28, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ANDREW SMITH, *Appellant*.

---

*Eric J. Nielsen* and *Christopher Gibson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Robin E. Sheridan, Deputy*, for respondent.

AGID, J. — James Smith appeals his conviction for unlawful display of a weapon in violation of RCW 9.41.270(1). The issue is whether Smith's display of a weapon in his backyard falls within the "place of abode" exception to the statute. RCW 9.41.270(3)(a). Smith's actions do not fall within the exception because a backyard is not "in" a person's place of abode. We therefore affirm.

## FACTS

On June 20, 2001, employees from Valley Tow Company were dispatched to the White River Presbyterian Church in Auburn. As they attempted to tow a car from the church parking lot, James Smith yelled at them from the backyard of a house directly behind the lot. Using vulgar language, he demanded that the car be left alone. Smith threatened, "I'm going to get my 45, and we'll take care of business."

Smith went inside his house and returned carrying a gun. He initially concealed the weapon in the waistband of his pants and taunted the workers. Displaying empty hands, he inquired, "[D]o I have a gun or don't I?" He then reached behind his back, removed a .45 caliber pistol, and walked toward the fence separating his yard from the church lot. He swung his gun in the air and stated, "I'm on my own property I can do whatever I want!"

Alarmed by Smith's behavior and fearing that he was dangerous and might harm them, one of the tow operators, Eric Perius, called 911 to report the situation. During Perius' conversation with the 911 operator, Smith disappeared briefly behind the fence. He reappeared carrying a four-foot long piece of metal pipe, which he held in a threatening manner. Smith left again and returned carrying a hammer. He swung the hammer over his head and

eventually threw it into a tree, where it remained lodged in the wood.

On November 16, 2001, the King County Prosecutor charged Smith with unlawful display of a weapon and possession of a firearm in the first degree. At a bench trial, the parties stipulated to the facts in the police reports. Smith moved to dismiss the charge of unlawful display of a weapon. The trial court denied the motion and convicted him. Smith received an exceptional sentence below the standard range. He appeals.

## DISCUSSION

■ Smith contends the trial court erred in ruling that his backyard was not a part of his abode and thereby not excepted from RCW 9.41.270(1). He asserts we should reverse his conviction because criminal statutes are to be construed strictly against the State and in favor of the accused.[1] We disagree. We review questions of statutory interpretation de novo.[2]

RCW 9.41.270 provides:

(1) It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

. . . .

(3) Subsection (1) of this section shall not apply to or affect the following:

---

[1] *State v. Haley*, 35 Wn. App. 96, 98, 665 P.2d 1375 (1983) (citing *City of Seattle v. Green*, 51 Wn.2d 871, 874, 322 P.2d 842 (1958)).

[2] *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002).

(a) Any act committed by a person while *in* his or her place of abode or fixed place of business . . . .[3]

 The legislature has not defined the phrase "place of abode" used in RCW 9.41.270(3)(a).[4] In the absence of a statutory definition, words are given their ordinary and usual meaning.[5] The ordinary meaning of abode is: one's home, place of dwelling, residence, and/or domicile.[6]

 The exception does not include Smith's backyard because it is limited to "a person while *in* his or her place of abode." RCW 9.41.270(3)(a) (emphasis added). The word "in" clearly implies inside, not one's backyard. If the legislature wanted to enact a broader exception, it could have used "at" rather than "in."

Under Smith's interpretation of the place of abode exception, a person could lawfully display a weapon in an intimidating manner as long as he or she remained on the property upon which his or her dwelling is located. This interpretation contradicts the purpose of RCW 9.41.270(1), which is to promote public safety by protecting people against those who carry weapons in a threatening manner. The place of abode exception comports with this purpose because one has a legitimate privacy right in his or her home, and the exception does not endanger the public by including behavior that occurs in an area exposed to the public. As the State notes, although a home's curtilage enjoys heightened protection under the Fourth Amendment, "a person does not have a reasonable expectation of privacy in areas of the curtilage impliedly open to the public."[7]

---

[3] (Emphasis added.)

[4] *Haley*, 35 Wn. App. at 98.

[5] *Id.* (citing *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979)).

[6] *Id.* (citing BLACK'S LAW DICTIONARY 20 (4th rev. ed. 1968); 1 OXFORD ENGLISH DICTIONARY 25 (1978)).

[7] *State v. Hornback*, 73 Wn. App. 738, 743, 871 P.2d 1075 (1994) (citing *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990)).

A backyard does not satisfy the place of abode exception under RCW 9.41.270.[8] Accordingly, we affirm Smith's conviction.

Affirmed.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 151 Wn.2d 1014 (2004).

---

[8] In *State v. Haley*, 35 Wn. App. 96, 665 P.2d 1375 (1983), Division Three had to decide whether a deck fell within the "place of abode" exception. It held that Haley's deck was an extension of his dwelling and therefore a part of his abode. We question that holding but need not decide the issue. And even if *Haley* were correct, it is distinguishable from this case. Unlike the deck in *Haley*, the backyard here is not an extension of Smith's residence. While Haley's deck was on the inner part of his property and attached to his residence, yards typically abut neighboring properties. This means that a person's conduct in his or her yard may extend beyond his or her property. Here, Smith's conduct occurred on the outskirts of his backyard where only a fence with breaks in it separated him from the tow operators in the church parking lot. His behavior was not contained to an audience on his property; he intended that his behavior traverse the fence to communicate threats. There is nothing to indicate Smith's yard is similarly situated to the deck in *Haley*.