IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30883-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHERINA EVERMAN-JONES, | ) | |
| also known as CHERINA L. EVERMAN, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Cherina Everman-Jones appeals her conviction for second degree animal cruelty, arguing the trial court erred in denying her motion to suppress. She contends an animal control officer conducted an unlawful search when she entered areas of curtilage not open to the public. And she argues that the officer lacked authority to seize her dog without a warrant under RCW 16.52.085 because there was no evidence the dog was in an immediate life-threatening condition. Finally, Ms. Everman-Jones contends insufficient evidence supports her conviction and that the trial court erred in denying her motion to arrest judgment. We disagree with Ms. Everman-Jones and affirm the trial court.

FACTS

In August 2011, Nicole Montano, an animal control officer for Spokane County Regional Animal Protection Service (SCRAPS), was dispatched to a house on West Spring Road in Marshall, Washington, following a complaint about the condition of a dog at that address. From the house's driveway, she could see a very thin dog tethered in the backyard. The dog's hip bones, ribs, and spine were prominently visible from that distance. She knocked at the front door, but got no answer. She then went to the backyard to get a closer look at the dog. She observed "a completely emaciated dog" with no fat deposits and a loss of muscle mass. Report of Proceedings (RP) at 24. The top of its skull was sunken in. The dog had water, but no food and no shelter. After examining the dog, Officer Montano removed it. She explained at trial, "I had a completely emaciated dog, tethered in the yard. The emaciation was life threatening at the time which warranted the removal." RP at 25. She was also "concerned that the dog was dehydrated and would not be able to survive the elements. I did not know when the owner would be home." RP at 25-26. She took photographs of the dog and transported it to Legacy Animal Medical Center for evaluation. The State charged Ms. Everman-Jones

2

by amended information with two counts of first degree animal cruelty.[1]

Before trial, Ms. Everman-Jones filed a motion to return the dog and to suppress evidence and dismiss. She argued that Officer Montano conducted an illegal search by "entering the areas of the curtilage which were obviously not impliedly open to the public." CP at 18. She also argued that the officer violated RCW 16.52.085, which only authorizes warrantless removal of an animal when the animal is in an "immediate life-threatening condition." CP at 19. She maintained that the dog was not in such condition as evidenced by its ability to stand and jump on the officer's truck and the fact that no emergency treatment was needed.

The State responded that the dog was in "open view" and, therefore, Ms. Everman-Jones had no expectation of privacy. It pointed out that the backyard was a wide open space without buildings, fences, or trees and therefore Officer Montano did not invade the curtilage when she went to the backyard to check on the dog. Finally, the State argued

---

[1] Count I alleged in part, "That the defendant, CHERINA L. EVERMAN-JONES, in the State of Washington, on or about August 10, 2011, did intentionally inflict substantial pain on an animal." Clerk's Papers (CP) at 160.

Count II alleged in part, "That the defendant, CHERINA L. EVERMAN-JONES, in the State of Washington, on or about August 10, 2011, did, with criminal negligence, starve an animal, which as a result caused substantial and unjustified physical pain that extended for a period sufficient to cause considerable suffering." CP at 160.

that Officer Montano was entitled to remove the dog under RCW 16.52.085 because she believed the dog was in an immediate life-threatening condition.

The trial court denied Ms. Everman-Jones's motion to suppress, concluding (1) the search was legal because the dog was kept chained in open view in her backyard, and (2) the dog was properly removed without a warrant under RCW 16.52.085 because "under the totality of the circumstances the officer believed the dog was in an immediate life-threatening condition." CP at 316.

At trial, Officer Montano testified to the events discussed above. She also stated that the dog weighed 67.5 pounds upon arrival at SCRAPS and ate "ravenously." RP at 32, 34. By November 2011, the dog had gained 31 pounds.

Dr. Mark Fosberg, a veterinarian for 30 years, testified that he examined the dog and determined that it was "a very thin, emaciated dog. On a body score we scale a one to five, we found a one." RP at 73. He noted "very thin muscles over the neck, the head, the shoulders, the back muscles, the pelvis and the rear legs." RP at 73. He attributed this severe muscle wasting to inadequate nutrition. Dr. Fosberg explained that the dog, an adult Great Dane mix, should have weighed between 100 and 140 pounds. He opined that the emaciation was due to starvation and that the dog was experiencing "[m]oderate to severe" pain as a result of the starvation. RP at 82.

4

After the State rested, the defense moved to dismiss both counts, arguing there was no evidence that Ms. Everman-Jones intentionally inflicted substantial pain on the dog. She also argued that there was no evidence to support count II or the lesser included offense of second degree animal cruelty because any evidence of pain was speculative. The trial court dismissed count I, finding the evidence did not establish that Ms. Everman-Jones acted intentionally.

Ms. Everman-Jones called several witnesses who testified that she regularly fed her dog. Her sister, Rachel McCully, testified that Ms. Everman-Jones fed the dog in the morning and afternoon and described the dog as healthy and happy. Lyle Polack, a family friend, testified that he observed the dog during a family camping trip the summer the dog was removed. He stated that the dog was fed twice a day and given treats between meals. Diana Everman, Ms. Everman-Jones's mother, testified that she lives next door to her daughter, visits daily, and observed her daughter feed the dog twice a day. She stated that she never saw the dog suffering or in pain.

Ms. Everman-Jones testified that she fed the dog twice a day and purchased a high calorie dog food for it. She stated there were no signs that the dog was in pain or suffering.

The jury was instructed on one count of first degree animal cruelty and the lesser included charge of second degree animal cruelty. It returned a guilty verdict on the lesser included charge.

After trial, Ms. Everman-Jones moved to arrest judgment, arguing she was prejudiced by the inclusion of the lesser included instruction because she was unable to prepare a defense for it. Specifically, she argued that "it was error for the state and the jury to be allowed to consider another charge over the defendant's objection that the defendant was not charged." CP at 285. The court denied the motion, noting the lesser included instructions "are always in the mix." RP at 319. Ms. Everman-Jones appeals.

## ANALYSIS

*Suppression Motion.* Ms. Everman-Jones challenges numerous trial court findings of fact and conclusions of law relating to the suppression motion. They will be addressed in turn below.

Upon a trial court's ruling on a suppression motion, we review challenged findings of fact for substantial evidence, challenged conclusions of law de novo, and determine whether the findings support the conclusions. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *Korst v. McMahon*, 136

6

Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). This is a deferential standard, which views reasonable inferences in the light most favorable to the prevailing party. *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995). If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it may have resolved a factual dispute differently. *Sunnyside Valley Irrigation Dist.*, 149 Wn.2d at 879-80. The party challenging a finding of fact bears the burden of showing that the record does not support it. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000).

Ms. Everman-Jones first assigns error to finding of fact 2, which states: "When Officer Montano arrived at that location she saw from the driveway a severely emaciated dog. She could clearly see the dog's ribs, lumbar vertebrae, pelvic bones and all bony prominences." CP at 314. Ms. Everman-Jones argues that the "testimony indicated that the officer could only see a 'thin dog' and that it only appeared that she could see the dog's ribs . . . from that distance." Appellant's Br. at 15 (emphasis omitted). She argues that it was not until the officer trespassed into the backyard that she saw the emaciated dog.

Officer Montano's testimony undermines Ms. Everman-Jones's argument. The officer testified, "[*f*]*rom my truck*, I was able to see that the dog was in poor condition. It was completely emaciated. I noticed its hip bones, rib bones, its abdomen was sunken in, and I was able to see part of its spinal processes." CP at 204 (emphasis added). Finding of fact 2 is supported by substantial evidence.

Next, Ms. Everman-Jones contends that finding of fact 3 is not supported by sufficient evidence because the house blocked part of the officer's view of the backyard. Finding of fact 3 stated, "the dog was chained in the defendant's backyard in open view of anyone passing by on the public road. There were no fences, trees, plants or other objects obstructing the view of the dog." CP at 315. This finding is supported by substantial evidence. Officer Montano testified that the dog was in open view of anyone passing by on the public road, and that there were no trees or other objects obstructing the view. The fact that the dog might not be visible from all angles does not undermine this finding.

Ms. Everman-Jones also assigns error to finding of fact 6, arguing that it is "incomplete and misleading." Appellant's Br. at 19. This finding states that: "Officer Montano noted that the dog had no shelter; the dog was exposed to the heat (80 degrees) and sun; the dog had no food." CP at 315. Ms. Everman-Jones contends that this finding

8

ignored the fact that the dog could travel to the back porch for shelter from the sun and that Officer Montano never looked under the bowl to see if there was evidence that the dog had been fed that morning. Ms. Everman-Jones misapprehends the court's role in reviewing findings of fact. It is not our task to evaluate whether a finding is incomplete; rather, our role is confined to determining whether substantial evidence supports the challenged findings. Here, Officer Montano testified that the dog was in the direct sun on a hot summer day, without protection from the elements, and the dog food bowl was empty. This testimony provides substantial evidence to support the court's finding.

Next, Ms. Everman-Jones assigns error to findings of fact 7 through 9, arguing that they are "irrelevant, misleading and prejudicial since the officer clearly testified that she had already made the decision to seize the dog . . . when she talked to the neighbor and father of Ms. Everman-Jones." Appellant's Br. at 20. These findings state that Officer Montano made contact with a neighbor, who turned out to be Ms. Everman-Jones's father, that the father told the officer he did not care about the dog, and that the officer should just take the dog. These findings mirror the officer's testimony, who stated that when she asked Ms. Everman-Jones's father about the dog, he responded that he did not "'give a shit about the dog'" and that she should just take it. CP at 209-10. Moreover,

9

these findings are relevant as they show the officer had no one with whom to leave the dog.

Ms. Everman-Jones also challenges finding of fact 10, which states: "Officer Montano removed the dog given the life threatening condition of the dog as well as for safe keeping as there was no shelter for the dog." CP at 315. Again, substantial evidence supports this finding. Officer Montano testified that the dog was "tied in direct sun," had lost a significant amount of muscle mass, and had "no discernable [sic] fat." CP at 207. She testified that after evaluating the "totality of the situation," she concluded that "this was a life threatening situation for this animal." CP at 210. She testified that she had responded to numerous calls over the years, in which a dog had died after being tethered in a yard without protection on a hot day. She opined that in view of the conditions she observed on the day in question, the dog was in imminent threat of death.

Finally, Ms. Everman-Jones assigns error to findings of fact 12 through 15, arguing that (1) the court ignored the fact that Dr. Fosberg concluded the dog was not in a life-threatening situation, and that (2) finding of fact 15, which notes that the dog gained 26 pounds in 21 days, is irrelevant. The challenged findings state that (1) Dr. Fosberg scored the dog's body condition at a 1 on a scale of 1 to 5, which he considered emaciated, (2) that Dr. Fosberg stated the dog was emaciated due to starvation, (3) the

10

dog weighed 67.5 pounds when weighed at Dr. Fosberg's office, and (4) the dog gained 26 pounds in 21 days.

Again, contrary to Ms. Everman-Jones's assertion, we do not evaluate whether the court ignored certain facts. Although Ms. Everman-Jones has a different view of the facts and the condition of the dog, the only issue before us is whether sufficient evidence supports the court's findings and whether those findings support the conclusions. Here, substantial evidence supports the court's findings. Officer Montano testified that upon examination, Dr. Fosberg concluded that the dog was emaciated and starving. The evidence also established that the dog quickly put on weight as soon as it was provided adequate amounts of food. Whether Dr. Fosberg later determined that the dog was not in an immediate life-threatening condition is immaterial for our purposes.

We conclude that substantial evidence supports the challenged trial court findings.

*Search and Seizure.* Ms. Everman-Jones challenges the trial court's conclusions of law that the warrantless search and seizure were lawful. Conclusion of law 1 stated: "There was no illegal search. The defendant had no expectation of privacy regarding her dog that she kept chained in her backyard, in open view." CP at 316. Ms. Everman-Jones contends that without evidence the dog was in an immediate life-threatening condition, Officer Montano's warrantless search and removal of the dog from the curtilage of her

property exceeded constitutional limits. The State responds that Officer Montano's entry was legitimate under the open view doctrine because the backyard was open to a public street traversing Ms. Everman-Jones's property and the dog was plainly visible.

We review a trial court's conclusions of law resulting from a suppression hearing de novo. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." A warrantless search is unreasonable unless it falls under one of Washington's recognized exceptions. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). The State bears the burden of establishing the validity of a warrantless search. *Garvin*, 166 Wn.2d at 250.

Although an individual maintains an expectation of privacy in his or her home's curtilage, police with legitimate business may enter those curtilage areas impliedly open to the public without first obtaining a warrant.[2] *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). In doing so, an officer must act as a "reasonably respectful citizen" would. *Id.* A curtilage area includes an access route to a house such as a driveway or

_____

[2] "The curtilage is that area 'so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.'" *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990) (quoting *United States v. Dunn*,

12

walkway leading to a residence, or the porch of the residence itself. *State v. Ferro*, 64 Wn. App. 181, 183, 824 P.2d 526 (1992).

Additionally, under the "open view doctrine," when an officer is lawfully present in an area, his detection of items using the senses does not constitute a search. *Seagull*, 95 Wn.2d at 901 (quoting 1 Wayne R. LaFave, *Search and Seizure* § 2.2, at 240 (1978)). The *Seagull* court explained:

> "[T]he observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public. . . . The object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution."

*Id.* at 902 (quoting *State v. Kaaheena*, 59 Haw. 23, 28-29, 575 P.2d 462 (1978)).

"However, 'a substantial and unreasonable departure' from an area of curtilage impliedly open to the public will be deemed to exceed the scope of the implied invitation and to intrude on a constitutionally protected expectation of privacy." *State v. Hoke*, 72 Wn. App. 869, 874, 866 P.2d 670 (1994) (quoting *Seagull*, 95 Wn.2d at 903). Whether a portion of the curtilage is impliedly open to the public depends on the facts of each case. *Seagull*, 95 Wn.2d at 903.

---

480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987)).

Here, Officer Montano had a legitimate interest in investigating the allegations of animal neglect. She was standing in an open driveway when she saw the dog in the backyard. The backyard area was unfenced and open, and her means of intrusion were not particularly intrusive. In *State v. Graffius*, the court found that officers did not violate the defendant's right of privacy by intentionally looking into a partially open garbage can located on a gravel parking area because the marijuana inside the garbage can was in open view. *State v. Graffius*, 74 Wn. App. 23, 27-28, 871 P.2d 1115 (1994). In reaching this conclusion, the court considered several factors, including whether the officer (1) acted secretly, (2) approached the area in daylight, (3) used the normal and most direct route to the house, and (4) created an artificial vantage point. *Id.* at 27.

Here, the officer's initial vantage point when viewing the dog was a public area open by implied invitation, and her entry into the backyard was not a substantial or unreasonable departure from the area. The path the officer took was a normal one for an ordinary member of the public to see if someone is home. She was not secretive and entered the backyard in daylight. She did not create an artificial vantage point. In sum, the officer was lawfully present at the vantage point and, therefore, did not conduct a "search" within the meaning of the Fourth Amendment. Officer Montano simply observed the dog in plain view from the road, a place she had a right to be. Given these

14

facts, Ms. Everman-Jones was "'not subject to any reasonable expectation of privacy.'"
*Seagull*, 95 Wn.2d at 902 (quoting *Kaaheena*, 59 Haw. at 29). "[W]hat is voluntarily
exposed to the general public . . . is not considered part of a person's private affairs."
*State v. Young*, 123 Wn.2d 173, 182, 867 P.2d 593 (1994). Accordingly, the trial court
properly concluded that this was an open view observation from an area impliedly open to
the public.

Ms. Everman-Jones next assigns error to the trial court's conclusion of law 2,
which stated: "There was no illegal seizure. Officer Montano properly removed the dog
from [the] defendant's home without a warrant under RCW 16.52.085(1). Under the
totality of the circumstances the officer believed the animal was in an immediate life-
threatening condition." CP at 316. Ms. Everman-Jones contends that the dog was
improperly seized under RCW 16.52.085 because the dog was able to get into Officer
Montano's van, Dr. Fosberg did not give it emergency treatment, and Dr. Fosberg opined
that the dog was not in an immediate life-threatening condition.

RCW 16.52.085(1) permits a law enforcement officer or animal control officer to
remove an animal without a warrant "if the animal is in an immediate life-threatening
condition." Despite Ms. Everman-Jones's claims, the court's findings of fact support its
conclusion that Officer Montano believed the dog was in an immediate life-threatening

condition. To reiterate, the court found that (1) Officer Montano saw a "severely emaciated dog," (2) the dog was suffering from muscle wasting, (3) the dog had no shelter, no food, and was exposed to high summer heat, and (4) Dr. Fosberg opined that the dog was emaciated due to starvation. CP at 314-15. We agree that Officer Montano believed the dog was in an immediate life-threatening condition.

The trial court's findings of fact are substantially supported by the record, and the facts support its denial of the suppression motion.

*Motion to Dismiss the Second Count of Animal Cruelty in the First Degree.* Ms. Everman-Jones next contends that the trial court erred when it denied her motion to dismiss count II for insufficiency of the evidence. She also contends the evidence was insufficient to support her conviction on the lesser included offense of second degree animal cruelty.

At the outset, we note that Ms. Everman-Jones waived her right to challenge the court's denial of her dismissal motion when she presented her case in chief. "[A] defendant who presents a defense case in chief 'waives' (i.e., may not appeal) the denial of a motion to dismiss made at the end of the State's case in chief." *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). However, Ms. Everman-Jones is more

accurately challenging the sufficiency of the State's evidence, a claim that can be brought at "a late stage of the proceedings." *Id.*

A claim of insufficiency admits the truth of the State's evidence and requires that all reasonable inferences therefrom be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is accorded equal weight with direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). In reviewing the evidence, we give deference to the trier of fact, who resolves conflicting testimony, evaluates the credibility of witnesses, and generally weighs the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). Credibility determinations are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

Ms. Everman-Jones argues the evidence is insufficient to support the conviction on the lesser included offense of second degree animal cruelty because the record reflected that she fed her dog twice a day and the dog did not show signs of pain. RCW 16.52.207 provides:

> (2) An owner of an animal is guilty of animal cruelty in the second degree if [he or she] knowingly, recklessly, or with criminal negligence:
> (a) Fails to provide the animal with necessary shelter, rest, sanitation, space, or medical attention and the animal suffers unnecessary or unjustifiable physical pain as a result of the failure.

As detailed above, the evidence showed that the dog was severely emaciated and left in the sun without food. Dr. Fosberg testified that the dog, which weighed 67 pounds upon admission at his clinic, should have weighed between 100 and 140 pounds, and was experiencing moderate to severe pain due to starvation. Although Ms. Everman-Jones testified that she fed the dog a high calorie dog food twice a day, the jury was free to reject her version of the events. *Thomas*, 150 Wn.2d at 874. We conclude that sufficient evidence supports the conviction for second degree animal cruelty.

*Motion to Arrest Judgment.* Finally, Ms. Everman-Jones claims the trial court erred when it denied her motion to arrest judgment at the end of her case. Review of a trial court's decision on a motion to arrest judgment requires this court to engage in the same inquiry as the trial court. *State v. Ngo Tho Huynh*, 107 Wn. App. 68, 76-77, 26 P.3d 290 (2001) (quoting *State v. Longshore*, 141 Wn.2d 414, 420, 5 P.3d 1256 (2000)).

Ms. Everman-Jones contends that the inclusion of the lesser included instruction of second degree animal cruelty, over her objection, effectively resulted in a conviction for an uncharged crime and, therefore, the court should have granted her motion to arrest judgment and dismiss. She argues, "since the jury found the defendant not guilty of the only crime charged, it is a violation of the defendant's due process right to a fair trial and

18

double jeopardy to allow the jury to proceed to another charge over the defense

objection." Appellant's Br. at 40-41.

Ms. Everman-Jones's argument is not persuasive. On February 2, 2012, without

objection, she was arraigned on the amended information, which added the second count

of first degree animal cruelty. The State correctly points out that arraignment on the

charge of first degree animal cruelty put Ms. Everman-Jones on notice that she could be

convicted of any lesser included offense. *State v. Royster*, 43 Wn. App. 613, 620, 719

P.2d 149 (1986). Moreover, RCW 10.61.003 provides that a criminal defendant may also

be convicted of a crime that is an inferior degree of the crime charged. *State v. Tamalini*,

134 Wn.2d 725, 731, 953 P.2d 450 (1998). The statute reads:

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

RCW 10.61.003.

As discussed above, sufficient evidence supported the conviction for second

degree animal cruelty. The trial court did not err when it denied Ms. Everman-Jones's

motion to arrest judgment.

19

No. 30883-9-III
*State v. Everman-Jones*

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____        _____
Brown, J.                                Korsmo, C.J.