IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>          v.<br><br>DEJONE DEWAYNE MICHAEL SIMPSON,<br><br>                              Appellant. | No.  81034-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Upon walking onto Dejone Simpson's driveway, Officer Mike Russell, a police officer for the City of Lakewood, could see the license plate of a Nissan Sentra parked in Simpson's driveway.  After reading the license plate number to dispatch, Officer Russell learned the vehicle had been reported stolen and arrested Simpson.  A jury found Simpson guilty on one count of possession of a stolen vehicle.

Simpson appeals his conviction, claiming that the trial court erred by (1) failing to dismiss his case without prejudice under CrR 8.3(b), and (2) denying his motion to suppress the evidence gathered after Officer Russell walked onto his driveway.  We do not consider Simpson's CrR 8.3(b) claim because he failed to adequately raise it below.  And we determine the court did not err by denying the motion to suppress because, as Officer Russell could see the license plate from the driveway, the plate was in open view.  Accordingly, we affirm Simpson's

Citations and pin cites are based on the Westlaw online version of the cited material.

conviction. We remand, however, to strike the criminal filing and DNA fees from Simpson's Judgment and Sentence.

## I. BACKGROUND

On March 18, 2017, Francisco Santiago saw a person stealing his car, a beige 1994 Nissan Sentra, from outside his apartment in Lakewood, Washington. Santiago called the police and filed a report.

On March 22, 2017, Officer Russell was patrolling the Rancho Villa area of Lakewood. While driving through Rancho Villa Mobile Home at 9:00 a.m., Officer Russell noticed a person inside, and under the "dash area" of, a beige Nissan in the driveway of Trailer 22. Because the Nissan was parked behind another car, Officer Russell could see about "three-quarters or better of the vehicle." Officer Russell thought the scene "looked abnormal, like possibly [the person was] maybe stealing the stereo or doing something to the ignition."

As Officer Russell approached the car, he called out to the person that was inside, whom he later identified as Simpson. Once on the driveway, Officer Russell could see the car's license plate number and read it to dispatch. Officer Russell asked Simpson "what he was up to," to which Simpson responded "that he was working on the vehicle" and "putting a stereo in the car." Dispatch then advised Officer Russell that the vehicle "was a [sic] confirmed stolen out of Pierce County." Officer Russell arrested Simpson. After Officer Russell placed Simpson in custody, Simpson "protested, saying that he had purchased the car for a hundred bucks."

2

On March 23, 2017, the State charged Simpson with one count of unlawful possession of a stolen vehicle.

The court ordered a competency evaluation for Simpson on April 11, 2017. The evaluation found Simpson was competent.

On July 14, 2017, Simpson filed a motion to suppress arguing that Officer Russell obtained the Nissan's license plate because of an unconstitutional search. Simpson asked the court to suppress "all information regarding the vehicle and Mr. Simpson," including the statements he made after his arrest.

The court heard testimony related to the motion to suppress on July 17, 2017. The court then denied the motion, determining the open view doctrine permitted Officer Russell to go onto the driveway, where he could then see the license plate.

On July 18, 2017, a jury convicted Simpson on one count of possession of a stolen vehicle.

On September 15, 2017, prior to sentencing, Simpson's attorney requested a second competency evaluation, which the court granted. The evaluator requested an inpatient competency evaluation for up to 15 days, or as allowed by statute.

The court entered a competency order for an inpatient evaluation on September 28, 2017. The order provided that Simpson "shall be admitted to the hospital within 7 days of signing of this order for a period of commitment of up to 15 days from the time of admission." The order made the evaluation report due by October 19, 2017.

3

On October 4, 2017, because Simpson had not yet been admitted to Western State Hospital (WSH), Simpson moved for an order to show cause "why an order dismissing [Simpson's case] and an order of contempt should not be granted." The court scheduled the show cause hearing for October 11, 2017.

At the show cause hearing, the court found WSH and the Department of Social and Health Services (DSHS) in contempt and ordered sanctions under Trueblood v. Wash. State Dep't of Soc. & Health Servs., 101 F. Supp. 3d 1010 (W.D. Wash. 2015).

WSH admitted Simpson on December 6, 2017. An evaluation determined that Simpson was competent and recommended that he return to court to resume the sentencing process. The court scheduled Simpson's sentencing.

On January 19, 2018, the court sentenced Simpson to 35 months. The court additionally imposed a $100 DNA collection fee and a $200 criminal filing fee. Simpson appeals.

## II. ANALYSIS

A. CrR 8.3(b)[1]

Simpson argues that we should dismiss his case without prejudice under CrR 8.3. Because Simpson did not raise this argument below, we do not consider it on appeal.

---

[1] CrR 8.3(b) provides:

**(b) On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Under RAP 2.5(a), we may refuse to consider an issue that a party did not raise before the trial court or that the court did not consider. See also State ex rel. Cosmopolis Consol. Sch. Dist. No. 99, Grays Harbor County v. Bruno, 61 Wn.2d 461, 472, 378 P.2d 691 (1963) ("This issue was not presented to, or considered by, the trial court, which precludes us from considering it upon this appeal."). To raise an argument before the trial court, "[a] party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error." State v. Lazcano, 188 Wn. App. 338, 355, 354 P.3d 233 (2015). Under RAP 2.5(a), we will generally not consider an issue a party did not adequately argue below; to be adequate, "the argument should be more than fleeting." Lazcano, 188 Wn. App. at 355.

Here, the conclusion of Simpson's motion titled "Memorandum in Support of Motion for Contempt" contains one sentence regarding CrR 8.3, and states, "Defendant further requests the Court dismiss the above-captioned matter for violation of 8.3(b)." In the court's order finding WSH and DSHS in contempt, the court neither mentions CrR 8.3(b) nor any request for dismissal.[2] Additionally, none of the transcripts below reflect any discussion of CrR 8.3(b).

Accordingly, Simpson's argument under CrR 8.3(b) was fleeting and thus failed to adequately present the issue to the trial court. The single sentence on the issue does not discuss or apply any relevant standards or case law. Additionally, that the court's order does not mention CrR 8.3(b) indicates that it

---

[2] The record does not reflect that Simpson filed any motion for reconsideration after the court's order failed to discuss dismissal under CR 8.3(b).

did not consider the issue below. For these reasons, we will not consider the issue on appeal. See State v. Nowinski, 124 Wn. App. 617, 630, 102 P.3d 840 (2004) (refusing to consider on appeal an argument for dismissal under CrR 8.3 because the party did not raise the argument below).

B. Motion to Suppress

Simpson argues that the trial court erred by denying his motion to suppress because Officer Russell obtained the Nissan's license plate number through a warrantless search. The State asserts the court properly determined that the open view doctrine applied to the license plate. We agree with the State.

"We review the denial of a motion to suppress to determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law." State v. Boisselle, 194 Wn.2d 1, 14, 448 P.3d 19 (2019). "We review the trial court's conclusions of law de novo." Boisselle, 194 Wn.2d at 14.

Generally, a person does not have a privacy interest in that which they voluntary expose to the public. State v. Carter, 151 Wn.2d 118, 126, 85 P.3d 887 (2004). Under the open view doctrine, a search does not occur if an officer detects something in open view because one does not have a reasonable expectation of privacy. State v. Seagull, 95 Wn.2d 898, 901-02, 632 P.2d 44 (1981). "Something detected by an officer's senses, from a nonintrusive vantage point, is in 'open view.'" State v. Myers, 117 Wn.2d 332, 345, 815 P.2d 761 (1991) (quoting Seagull, 95 Wn.2d at 902). "An officer is permitted the same license to intrude as a reasonably respectful citizen." Seagull, 95 Wn.2d at 902.

6

Though the curtilage of a home, such as a driveway, has heightened protections under the Fourth Amendment, "a person does not have a reasonable expectation of privacy in areas of the curtilage impliedly open to the public." State v. Hornback, 73 Wn. App. 738, 743, 871 P.2d 1075 (1994). "Thus, an entry by law enforcement officials onto those areas of the curtilage, such as driveways, walkways or access routes leading to a residence, does not constitute a search and does not implicate the Fourth Amendment." Hornback, 73 Wn. App. at 743.

The trial court determined that the Nissan license plate was in open view because Officer Russell could see it from Simpson's driveway. Simpson does not challenge the court's finding that Officer Russell could view the license plate once he "proceeded down the parking strip or driveway." As such, the finding is a verity on appeal. State v. Brown, 194 Wn.2d 972, 981 n.1, 454 P.3d 870 (2019). Because Officer Russell observed the Nissan's license plate from Simpson's driveway—a lawful vantage point—the trial court did not err by determining that the open view doctrine applied.[3]

C. Discretionary Costs

Simpson asks that we strike the $200 filing fee and $100 DNA fee from his judgment pursuant to State v. Ramirez, 191 Wn.2d 732, 739, 426 P.3d 714 (2018). Ramirez, decided after the trial court imposed the fees in this case, held

_____

[3] Simpson argues that because Officer Russell had to go onto his driveway to see the license plate, and this "initial entry on the property was not based on a reasonable suspicion of criminal activity," the officer was not privileged to enter onto the property. But because Officer Russell could lawfully go onto Simpson's driveway, just as a respectful citizen could, the officer did not need reasonable suspicion to walk onto it. See Hornback, 73 Wn. App. at 743. Furthermore, because we determine that the court properly admitted the evidence under the open view doctrine, we do not address whether Officer Russell seized Simpson.

that trial courts may not impose discretionary costs on an indigent criminal defendant. 191 Wn.2d at 746. Here, the trial court recognized Simpson's indigence when it allowed him to pursue his appeal at public expense. The criminal filing fee was discretionary. Ramirez, 191 Wn.2d at 739 (providing that criminal filing fees are discretionary). The DNA fee was also discretionary since the State had previously collected Simpson's DNA. Ramirez, 191 Wn.2d at 747 (stating that the DNA fee is discretionary if the State has collected the offender's DNA pursuant to a prior conviction).[4] The State agrees that we should strike the fees.

Affirmed but remanded to strike the criminal filing and DNA fees from Simpson's Judgment and Sentence.

_____
Chun, J.

WE CONCUR:

_____          _____

---

[4] Former RCW 43.43.754 (1999) required DNA collection for adult and juvenile felonies.

8